UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GERARD CAMPBELL

                Plaintiff,                        MEMORANDUM AND ORDER
                                                               16-CV-7176

- against -

DRINK DAILY GREENS, LLC

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

        Plaintiff Gerard Campbell ("Campbell") brings this putative consumer class action against defendant Drink Daily Greens, LLC ("Defendant"), a company that manufactures and sells juice products. The case is in federal court on the basis of diversity jurisdiction. Campbell asserts three causes of action: (i) deceptive business practices under New York General Business Law ("GBL") § 349; (ii) false advertising under GBL § 350; and (iii) common-law fraud. The crux of all three claims is the allegation that Defendant sells juice products with misleading labels. Pending now before the Court is Defendant's motion to dismiss the Second Amended Complaint, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. ECF No. 38. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND[1]

        Defendant is a Texas-based company that "manufactures and sells juice products bearing the name 'Daily Greens.'" ECF No. 30 ("Second Am. Compl.") ¶ 1. Two of its product lines are at issue in this case: "Green Juices" and "Just Juices" (together, the "Products"). *Id.* ¶ 2. Defendant

---

[1] Except where otherwise noted, the facts in this section are drawn from the Second Amended Complaint.

1

manufactures the Products through a two-step process. *Id.* ¶ 12. Step one is "cold-pressing," itself a two-step process by which fruits and vegetables are first (i) shredded into a pulp and then (ii) the pulp is subjected to hydraulic pressure, which pressure extracts juice and water from the produce while leaving behind the pulp and fiber. *Id.* ¶ 13. After bottling comes step two: "high pressure processing" ("HPP"). *Id.* ¶ 14. During HPP, an FDA-approved method for eliminating harmful pathogens and bacteria, "[t]he bottles are placed into a cylindrical vessel and pressurized at levels up to 87,000 pounds per square inch." *Id.*

Plaintiff Campbell, a Brooklyn resident, claims that he purchased one of the Products in August 2016. *Id.* ¶ 65. More to the point, Campbell claims that he paid a premium for the Products based on several purported misrepresentations on the Products' labels and on Defendant's website. *See id.* ¶¶ 66-77. Specifically, Campbell claims that Defendant, on its Products' labels and on its website, made a number of materially false or misleading representations—namely, that the Products (i) are "cold-pressed"; (ii) are "not pasteurized"; (iii) are fresh or have the quality of "freshness"; (iv) are "never heated"; and (v) have "4.5 pounds of produce pressed into every bottle." *See id* ¶¶ 18-54. According to Campbell, these claims about the Products are all materially false or misleading in light of the fact that the Products undergo HPP.

Pasted below are the portions of the Products' label that Campbell included in the Second Amended Complaint; these portions of the label contain the alleged misrepresentations on which Campbell claims to have relied in making his purchases:[2]

---

[2] Though Campbell included images of the label of only one of the Products, "Harmony Sweet Greens," he alleges that, for all of the Products, "the labeling, packaging and representations are substantially similar or identical with respect to the material information indicated [in the Second Amended Complaint]." Second Am. Compl. ¶ 4.

2





Second Am. Compl. ¶¶ 8-9. In addition, Campbell claims to have relied on Defendant's website, drinkdailygreens.com, for its representation that "the [P]roducts are not subjected to a process of pasteurization." *Id.* ¶¶ 11, 70.

What Campbell's Second Amended Complaint nowhere acknowledges, however, is that the Products' label also discloses, in boldfaced text, that the Products are "High Pressure Processed." The images Campbell included in the Second Amended Complaint are carefully cropped, failing to include the portion of the Products' label pasted below:

3



ECF No. 40-1. Defendant submitted this image of the Products' label as an attachment to a declaration in support of its motion to dismiss, ECF No. 40-1, and Campbell has not disputed its accuracy or authenticity. Accordingly, the Court takes judicial notice of this portion of the label under Rule 201(b)(2) of the Federal Rules of Evidence. See *Bowring* v. *Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 389 (E.D.N.Y. 2017). This portion of the label is appropriate for consideration on a motion to dismiss because Campbell clearly relied on it in bringing his suit. See *ATSCI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Second Amended

Complaint repeatedly highlights two statements that appear only on this portion of the label: (i) "[p]ressing raw vegetables preserves nutrients" and (ii) "[n]ever heated to preserve freshness and nutritional value." Second Am. Compl. ¶¶ 10, 23, 49, 52, 71.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns*, 493 F.3d at 98. But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## DISCUSSION

Campbell brings claims for (i) deceptive business practices and false advertising under GBL §§ 349 and 350 and (ii) common-law fraud. The GBL claims and the fraud claims are addressed separately below.[3]

**I.  Campbell's GBL §§ 349 and 350 Claims**

---

[3] Because the Court concludes that Campbell has not plausibly stated a claim upon which relief can be granted, the Court need not and does not address Defendant's arguments (i) that Campbell's state-law claims are preempted by federal law or, in the alternative, (ii) that the Court should defer to the FDA and dismiss or stay Campbell's claims under the doctrine of primary jurisdiction.

5

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349(a). GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." *Id.* § 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch* v. *Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). Defendant challenges the second element, arguing that Campbell has not plausibly alleged that Defendant made any materially misleading statements on either its labels or its website. *See* ECF No. 39 ("Def.'s Br.") at 7-20; ECF No. 43 ("Def.'s Reply Br.") at 4-10.

The materiality element of a claim under GBL § 349 or GBL § 350 is "objective"—that is, "[w]hether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman* v. *Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000); *accord Cohen* v. *JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). As such, "[c]ourts should make this determination on a motion to dismiss." *Campbell* v. *Freshbev LLC*, No. 16-CV-7119 (FB), 2018 WL 3235768, at *4 (E.D.N.Y. July 3, 2018) (citing *S.Q.K.F.C., Inc.* v. *Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996) (holding district court should have dismissed GBL § 349 claim at 12(b)(6) stage on grounds that "a reasonable consumer would not have been misled by [defendant's] conduct")).

Here, as noted above, Campbell alleges that a number of Defendant's statements about its Products are materially misleading—to wit, that the Products (i) are "cold-pressed"; (ii) are "not pasteurized"; (iii) are fresh or have the quality of "freshness"; (iv) are "never heated"; and (v) have

6

"4.5 pounds of produce pressed into every bottle." The notion that these statements are materially misleading does not withstand even scant scrutiny.

### A. "Cold-Pressed"

Campbell concedes that the Products are, in fact, cold-pressed before undergoing HPP. *See* Second Am. Compl. ¶¶ 12-13 (explaining that the first step in the manufacturing of the Products "is cold-pressing"); *id.* ¶ 40 ("[I]t may be literally true that defendant's products are cold-pressed at some point . . . ."). He argues, nonetheless, that the "cold-pressed" label on the Products is materially misleading because it would lead a reasonable consumer to conclude that no other processes (like, e.g., HPP) were applied to the Products after cold-pressing. Campbell draws a distinction between (i) juice that has been cold-pressed and (ii) cold-pressed juice. According to Campbell, the Products are merely the former, but Defendant misleadingly presents them as the latter. *See* ECF No. 15 ("Pl.'s Opp'n Br.") at 3 ("The SAC alleges that plaintiff relied upon the representations of defendant . . . that the product was cold-pressed juice (noun), not that the product was cold-pressed (verb) at some previous time."); Second Am. Compl. ¶¶ 20-24.

This argument amounts to little more than grammatical sophistry, and it is implausible on its face. Campbell made the same argument in a different case against a different juice company, and another court in this District rightly rejected it, explaining as follows: "There is no 'only' or 'exclusively' modifier before 'cold-pressed' to indicate that the juice has been subjected to no other process. A reasonable consumer would not mistake the cold-pressed claim to be a claim that pressure was never applied to the juice products." *Freshbev*, 2018 WL 3235768, at *6. Equally if not more significant, the Products' label states, in boldfaced text, "High Pressure Processed," and this disclaimer appears directly above and below other, smaller-font text Campbell claims to have read and relied upon. In light of this clear disclaimer, no reasonable consumer could have

7

been misled into believing the Products did not undergo any additional processes after being cold-pressed. *See Bowring*, 234 F. Supp. 3d at 390 ("Courts routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct." (collecting cases)).[4]

### B. "Not Pasteurized"

Campbell also claims that Defendant's representation that the Products are "not pasteurized"—a statement that appears on Defendant's website but not on the Products' label—is misleading for two reasons. First, he alleges that this representation "is false or misleading because no relevant regulation defines pasteurization for this type of product." Second Am. Compl. ¶ 28. Second, and relatedly, he alleges that this representation, together with the representation that the Products are not heated, "suggest[s] to a reasonable consumer that the Products are not subject to an additional treatment process." *Id.* ¶ 53. The Court is not persuaded.

As to Campbell's first point, that "no relevant regulation defines pasteurization for this type of product," this is true only in the narrowest sense—that no "binding" "regulation" has defined what pasteurization means for juice. However, the FDA has defined pasteurization of juice in non-binding ***guidance***; that guidance specifically defines pasteurization as "a ***heat treatment*** sufficient to destroy vegetative cells of pathogens" and then later identifies HPP, by contrast, as a "***[n]on-[t]hermal [t]reatment*** for [j]uice." Food & Drug Admin., *Guidance for*

---

[4] Tellingly, Campbell attempted to support this argument via comparison to the manner in which two of Defendant's competitors, Starbucks and Bolthouse Farms, identify and label their products. *See* Second Am. Compl. ¶¶ 25-27. He included in the Second Amended Complaint images of the labels for Starbucks's and Bolthouse's juice products, which images suggested that those companies label their juices as "high pressure processed" and not also "cold-pressed." *See id.* ¶¶ 25-27. But the images of Starbucks and Bolthouse labels that Campbell included in his complaint are misleadingly cropped, and as the uncropped images of the full labels reveal, those companies also prominently identify their juices as "cold-pressed." *See* ECF No. 40-3.

8

*Industry: Juice HACCP Hazards and Controls Guidance First Edition*, §§ II and V(C)(4.5) (Mar. 3, 2004) (emphases added), https://www.fda.gov/Food%20/GuidanceRegulation/Guidance DocumentsRegulatoryInformation%20%20/Juice/ucm072557.htm. Similarly, a separate FDA guidance document on juice regulation describes HPP as an alternative to pasteurization. *See* Food & Drug Admin., *Guidance for Industry: Questions and Answers on Juice HACCP Regulation*, question 37 (Aug. 31, 2001 (identifying "high pressure" as a way to "achieve a 5-log reduction without pasteurizing the [juice] product"). Additionally, a raft of federal regulations addressing pasteurization in other contexts all define or refer to it as a thermal process. *See, e.g.*, 21 C.F.R. § 131.3(b) (milk and cream); *id.* § 133.3(d) (cheeses and related cheese products); *id.* § 146.140(a) (pasteurized orange juice); *id.* § 1240.61(b) (mandatory milk pasteurization). And these regulatory definitions are all in accord with lay dictionary definitions of pasteurization. *See, e.g.*, *The American Heritage Dictionary of the English Language* (5th ed. 2017) (defining pasteurization as "[t]he act or process of ***heating*** a food, especially a beverage such as milk or beer, to a specific temperature for a specific period of time in order to kill microorganisms that could cause disease, spoilage, or undesired fermentation").

In sum, regulatory and lay authorities indicate that pasteurization is a heat/thermal treatment—unlike HPP, a process that eliminates harmful pathogens through the application of pressure, not heat. That no binding regulation precisely states this fact as to juice, specifically, hardly means that it is necessarily misleading to identify a product subject to non-thermal HPP as "not pasteurized." As to whether it can *ever* be misleading to identify a juice subjected to HPP as "not pasteurized," the FDA issued a proposed rule in 1998, on the labeling of juice products, that is on point. *Food Labeling: Warning and Notice Statements; Labeling of Juice Products*, 63 Fed. Reg. 20,486-01 (Apr. 24, 1998). In the proposed rule, the FDA "tentatively conclude[d]" that

9

"[m]anufacturers who wish to label their products voluntarily with the term 'pasteurized' or with the term 'unpasteurized,' along with the warning statement, may do so under the proposed rule, provided that these terms are used in a truthful and nonmisleading manner." *Id.* at 20,488-89. The agency elaborated as follows:

> [L]abeling a product as "unpasteurized" ***may be misleading*** in that the term does not distinguish between a product that may contain harmful pathogens that could result in serious disease and one that is treated using a method (other than pasteurization) that is capable of achieving a 5-log reduction in the target pathogen. A product that is processed by a means other than pasteurization to achieve a 5-log reduction in the target pathogen does not have the potential microbiological hazard, and thus, would not require a warning statement, yet that product could not be labeled "pasteurized." ***Without additional information***, the consumer would not know how to interpret the label with the term "unpasteurized."

*Id.* at 20,488 (emphases added). Thus, while labeling a juice product unpasteurized "may" be misleading, such labeling will not be misleading provided there is sufficient "additional information." The FDA adopted this proposed rule as a final rule later in 1998, and in doing so the agency reiterated that manufacturers may "describe[] a juice product as 'pasteurized' or 'unpasteurized' . . . so long as the statement is factually accurate and is not presented in a manner that would cause the statement to be misleading." *Food Labeling: Warning and Notice Statement; Labeling of Juice Products*, 63 Fed. Reg. 37,030-01, 37,034 (July 8, 1998).

Here, a reasonable consumer would not be misled by Defendant's factually accurate statement, on its website, that the Products are not pasteurized because the website—which Campbell claims to have read—also explains that the Products are subject to HPP, "an alternative to pasteurization," and describes the HPP process. Moreover, as discussed above, the Products' label—which says nothing of pasteurization—includes a bold-text disclaimer indicating that the Products are subject to HPP. This clear provision of information regarding HPP renders entirely implausible Campbell's claim that the "not pasteurized" representation "suggest[s] to a reasonable

10

consumer that the Products are not subject to an additional treatment process." *See Freshbev*, 2018 WL 3235768, at *6 (juices identified as "unpasteurized" were not misleading because by "explain[ing] that the juices were treated with pressure" the labels "provide[d] the consumer with the requisite additional information").

### C. "Freshness"

Campbell alleges that Defendant falsely "represents the Products as fresh or having the quality of 'freshness.'" Second Am. Compl. ¶ 18. But while the Second Amended Complaint refers to "Defendant's usage of the 'fresh,'" *id.* ¶ 54, Defendant does not actually identify the Products as "fresh." And the words Defendant actually used—"[n]ever heated to preserve freshness"—are not misleading in context; they appear directly below the larger, bold-faced disclaimer indicating that the Products are "High Pressure Processed." Plaintiff's allegation, then, that the "freshness" led him to believe that the Products were nutritionally equivalent to "a product which was not treated after being cold-pressed," *id.* ¶ 95, is simply not plausible. A reasonable consumer would not have been so misled given the HPP disclaimer directly above the "freshness" language.

### D. "Never Heated"

Campbell alleges that it is misleading for Defendant to represent that the Products are "never heated." But Campbell does not dispute Defendant's description of its production process, which "does not involve the application of heat and uses ice-baths to keep its juice at temperatures far below those where the ingredients are grown." Def.'s Br. at 2. Instead, he argues that the "never heated" claim is "intended to create the false impression that the Products do not undergo an additional treatment process *after* being cold-pressed." Pl.'s Opp'n Br. at 11. This inferential leap is entirely unjustified, however. Indeed, it is flatly contradicted by Defendant's clear

11

disclaimers regarding HPP, discussed above.  The "never heated" representation is thus not materially misleading.

### E. "4.5 Pounds of Produce Pressed Into Every Bottle"

Lastly, Campbell also alleges that the Product labels materially mislead by stating, "4.5 Pounds of Produce Pressed Into Every Bottle." Second Am. Compl. ¶ 46. He does not dispute the actual weight of the produce pressed into each bottle.  Rather, he argues that the representation regarding the weight "falsely suggests that the Products contain the nutritional value and health benefits that can be obtained by eating the equivalent amount, in weight, of fruits and vegetables. However, the Products are devoid of valuable pulp, fiber and other naturally occurring elements." *Id.* ¶ 47. This claim, too, is farcical on its face.  The Products weigh 12 ounces each, not 4.5 pounds, and in any event the Product's nutrition facts—including their weight—are listed directly below one of the "4.5 pounds" statements.  Defendant made these and other arguments regarding the "4.5 pounds" representation in its brief in support of its motion to dismiss, Def.'s Br. at 19-20, and Campbell did not respond to any of them in his opposition brief.  Accordingly, the Court finds that the "4.5 pounds" representations on the Products' labels are not materially misleading.

\* \* \*

Since Campbell has not plausibly alleged any materially misleading statements or omissions by Defendant, he has failed to state a claim under either § 349 or § 350 of the GBL.

## II. Campbell's Fraud Claim

To state a claim for fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co.* v. *Putnam Advisory Co., LLC*, 783 F.3d

395, 402 (2d Cir. 2015). Here, Campbell's fraud claim flounders on the first element; as discussed above, he has failed to allege a material misrepresentation or omission of fact. Moreover, Campbell has not alleged facts sufficient to satisfy the scienter element (i.e., intent to defraud). In any event, Campbell appears to have abandoned his fraud claim. Defendant made these and other points in its opening brief, and Campbell did not respond or otherwise defend (or even mention) his fraud claim in his opposition brief. *See Frontline Processing Corp.* v. *Merrick Bank Corp.*, No. 13 Civ. 3956 (RPP), 2014 WL 837050, at *11 (S.D.N.Y. Mar. 3, 2014) ("[Plaintiff] did not respond to [the defendant's] arguments in support of its motion to dismiss the deceit claims, and therefore this Court deems the deceit claim abandoned."); *Lipton* v. *Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss the Second Amended Complaint. This action is hereby dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
September 4, 2018

/s/_____
I. Leo Glasser                                    U.S.D.J.