**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

GERARD CAMPBELL, individually on behalf of himself and all others similarly situated,

        Plaintiffs,

    v.

DRINK Daily Greens, LLC, a Delaware limited liability company,

        Defendant.

Case No. 1:16-cv-07176-ILG-PK

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11**

J. Noah Hagey, Esq.
Matthew Borden, Esq. (*pro hac vice*)
Amit Rana, Esq. (*pro hac vice*)
BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel./Fax: (646) 829-9403
hagey@braunhagey.com
borden@braunhagey.com
rana@braunhagey.com

*Attorneys for Defendant Drink Daily Greens, LLC*

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 3

      A.     Plaintiff's Allegations that Daily Greens Juices Are "Heated" Are False ............. 4

      B.     Plaintiff's Lawyers Knew before Filing the Complaint that HPP Does Not "Pasteurize" or Destroy the Nutrients in Daily Greens' Products ......................... 5

            1.     A District Court Dismissed Identical Claims Because It Found Plaintiff's Lawyers Were Aware of the Science that Refutes Them ......... 5

            2.     Plaintiff's Lawyers Know that HPP Is Not Heat Pasteurization ................ 7

      C.     Plaintiff Was Not Misled About How Daily Greens' Products Are Made ............ 9

      D.     Daily Greens' Efforts to Avoid Bringing This Motion ......................................... 10

ARGUMENT ............................................................................................................... 11

I.     PLAINTIFF AND HIS LAWYERS VIOLATED RULE 11 BECAUSE THE COMPLAINT, FAC, AND SAC CONTAIN KNOWINGLY FALSE ALLEGATIONS OF FACT ............................................................................... 11

II.     PLAINTIFF AND HIS LAWYERS VIOLATED RULE 11 BECAUSE ANOTHER COURT ALREADY TOLD THEM THE CLAIMS ARE MERITLESS .................................................................................................... 13

III.    THE COURT SHOULD IMPOSE SANCTIONS ......................................... 13

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*Alamilla v. Hain Celestial Group, Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014) ............................................................... passim

*Eastway Constr. Corp. v. City of New York*,
   762 F.2d 243 (2d Cir. 1985)................................................................. 11

*Gambello v. Time Warner Commc'ns, Inc.*,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) .................................................. 12

*Lawrence v. Wilder Richman Sec. Corp.*,
   417 Fed.Appx 11 (2d Cir. 2010) ........................................................... 13

*Lipin v. Nat'l Union Fire Ins. Co.*,
   202 F. Supp.2d 126 (S.D.N.Y. 2002)..................................................... 13

*Pentagen Techs. Int'l., Ltd. v. United States*,
   172 F. Supp. 2d 464 (S.D.N.Y. 2001).................................................... 13

*Perry v. S.Z. Rest. Corp.*,
   45 F. Supp. 2d 272 (S.D.N.Y. 1999)...................................................... 12

*Prim v. Peatco Ltd. L.P.*,
   Case No. 90-cv-7272, 1994 WL 570754 (S.D.N.Y. Oct. 17, 1994).................................. 11, 12

*Sept. 11th Liab. Ins. Coverage Cases*,
   243 F.R.D. 114 (S.D.N.Y. 2007) ........................................................... 12

*Smith v. Westchester Cty. Dep't of Corr.*,
   2013 WL 5192751 (S.D.N.Y. Sept. 16, 2013)....................................... 11

*Watkins v. Smith*,
   No. 12 CIV. 4635 DLC, 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013).................................... 13

## RULES

Fed. R. Civ. 11 ............................................................................... 1, 2, 11, 12, 13
Fed. R. Civ. 11(c)(2) .......................................................................... 13

## __REGULATIONS__

21 C.F.R. § 120.24(a)................................................................................................. 7

21 C.F.R. § 131.3(b) ................................................................................................ 7

21 C.F.R. § 133.3(d) ................................................................................................ 8

21 C.F.R. § 146.140 ................................................................................................. 8

Defendant Drink Daily Greens, LLC ("Daily Greens") respectfully submits this memorandum in support of its motion for sanctions pursuant to Rule 11.

## INTRODUCTION

Daily Greens served the instant Rule 11 motion on March 30, 2017.   The Court held hearing this motion in abeyance pending its ruling on Daily Greens' motion to dismiss.  (Dkt. No. 25 at 7 ("consideration of the Rule 11 motion was deferred pending disposition of the motion to dismiss").)  On September 4, 2018, the Court granted Daily Greens' motion to dismiss in full, dismissing all the claims with prejudice.  This motion is now appropriate.[1]

This case was a putative "class action" filed by a captive plaintiff to extort money from an honest business that makes good products.  Daily Greens is a small business based in Texas that has had this false "class action" publicly pending against it for almost two years as a result of the misconduct detailed in this motion.

Plaintiff Gerard Campbell is a serial litigant who brought this frivolous case at the behest of two law firms that had an identical case dismissed in California.  Before signing the Complaint, Plaintiff's lawyers made no effort to investigate the underlying claims, which are false.  When Defendant sent them a letter explaining that the Complaint is based on untruthful allegations, Plaintiff's lawyers refused to respond and refused to correct the false pleading. When Defendant served this Rule 11 motion on them, they did not withdraw or correct the false pleading. Plaintiff and his lawyers also doubled down, later signing a First Amended Complaint ("FAC") and Second Amended Complaint ("SAC") asserting the same false allegations and

---

[1] The Court retains jurisdiction to resolve sanctions motions against plaintiffs after their action has been dismissed.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) ("it is well established that a federal court may consider collateral issues after an action is no longer pending [including] . . . the imposition of a Rule 11 sanction.").

adding new images that the Court found were "carefully cropped" in its Order dismissing the case with prejudice.  (Dkt. No. 46, at 3.)  Plaintiff and his lawyers left their claims publicly pending against Daily Greens for over a year and insisted on wasting the Court's time when they knew their allegations were false.  This is a rare situation where Rule 11 sanctions are appropriate to punish Plaintiff and his lawyers and to compensate Daily Greens for having to defend a knowingly frivolous lawsuit.

The core allegations of this lawsuit are that Plaintiff bought juice made by Daily Greens because he was misled into believing that Daily Greens' juice was not heated and unpasteurized, and that the statements that Daily Greens' juice is not pasteurized and not heated were material to him.  (Compl. ¶¶ 67-69; SAC ¶¶ 69-71.)  These allegations are knowingly false because:

1.     As stated on the label and website Plaintiff claims to have read, Daily Greens' products are subject to "High Pressure Pascalization" (HPP), a method for removing harmful pathogens that is allowed by the FDA as an alternative to pasteurization.

2.     HPP by definition is not "heat pasteurization" and does not heat the juice as alleged by Plaintiff.  Any minor temperature increase associated with two minutes of HPP (which is done at near-freezing temperatures) does not raise the temperature anywhere near the temperatures of the fields in Texas and Mexico where the vegetables used to make Daily Greens' juices are grown.

3.     A federal judge in the Northern District of California dismissed identical claims made by Plaintiff's lawyers because they had cited two scientific articles that showed that HPP did not alter the taste and nutritional content of juice.  *Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014). Plaintiff's iterative pleadings omitted these citations, failed to advise the Court of the prior dismissed case, and cited no evidence at all.

After this case was filed, Daily Greens sent Plaintiff a letter explaining exactly how its juice was processed. When that did not work, Daily Greens served this motion and its motion to dismiss, which explained, *inter alia*, that Daily Greens affirmatively advertises on its labels that its juice is subjected to HPP, which meant that as a matter of law, Plaintiff could not plausibly allege that he was unaware that the juice was processed in this manner. Plaintiff is also well aware (from the scientific articles he submitted to Judge Chhabria but did not provide to this Court) that use of HPP cannot be material to anyone because HPP does not alter the nutritional content or flavor of the juice. Daily Greens respectfully moves for sanctions as may be equitably decided by the Court, including without limitation, an award of the unnecessary legal fees and costs Daily Greens has incurred in defending this action. To date, Daily Greens has been forced to incur $131,105 in defending this action[2], much of which resulted from the inappropriate and inefficient tactics Plaintiff elected to deploy. (Declaration of Noah Hagey ("Hagey Decl.") ¶ 20.)

## BACKGROUND

Defendant Daily Greens is a small woman-run business based in Austin, Texas that sells organic juices. (Declaration of Shauna Martin ("Martin Decl.") ¶ 1.) Its founder, Shauna Martin, started the company after surviving breast cancer at the age of thirty-three when her son was one year old. (*Id*. ¶ 2.) As part of her recovery from ten surgeries and extensive chemotherapy, Shauna began drinking green juice for its healing power, and her business followed. (*Id*.) Daily Greens only uses organic, fair-trade, non-GMO ingredients. (*Id*. ¶ 3.) The company recycles all the organic wastes from its juicing process, often at a worm farm where it is turned back into organic soils and fertilizers. Its juicing facility only uses cleaning

---

[2] Daily Greens is only seeking recovery of $111,439, which represents a 15% discount of the amount actually incurred.

agents and manufacturing processes that are sustainable and do not pollute the environment. (*Id*. ¶ 4.) A portion of all Daily Greens' sales goes to fighting breast cancer.  (*Id*. ¶ 7.)

Plaintiff is an inveterate litigant who has agreed to be the plaintiff in at least three cut-and-paste lawsuits at the behest of his lawyers.  (Hagey Decl., Exs. 1-2.)  Each of those cut-and-paste actions identically alleges that Campbell was fooled into buying juices that were treated at high pressure because they were "heated" and "pasteurized."  (*Id*.)  This Court has previously taken judicial notice of the analogous cases and has highlighted notable similarities between the allegations in this case and *Alamilla v. Hain Celestial Group, Inc.* (May 24, 2017, Order, Dkt. 25).  As detailed below, Plaintiff's boilerplate allegations were made without any investigation into the process Daily Greens actually uses – which *does not* heat or pasteurize the juice – and when he was told this, he refused to correct his pleading.

### A.    Plaintiff's Allegations that Daily Greens Juices Are "Heated" Are False

The boilerplate Complaint, FAC and SAC state multiple times that Daily Greens' juices are falsely mislabeled by stating they are "never heated."  (*E.g*., Compl. ¶ 37; SAC ¶ 51.)  This is false.  Plaintiff made these false allegations without performing any investigation of the process that Daily Greens actually uses.  In actuality, Daily Greens' juice never even reaches ambient temperature in the production process, much less a temperature that would pasteurize the juice, as Plaintiff has also alleged.  (Martin Decl. ¶ 5.)

Daily Greens' unique production process occurs as follows:  First, to ensure that its juice is never heated, Daily Greens goes well beyond other companies and refrigerates its entire facility to a temperature between 32-41º F.  (*Id*. ¶ 5.)   The juice is cold-pressed, bottled, capped and sealed at this temperature.  (*Id*.)  Second, after the juice is cold-pressed, it is placed in a non-insulated steel vessel.  (*Id*.)  The vessel is then filled with water chilled to 4-5° C, just above freezing temperature.  (*Id*.)  While in this cold bath, the juice is subjected to hydraulic high-

pressure processing for two minutes (not 3-10 minutes as alleged in ¶ 25 of the Complaint).  (*Id*.)
Because the metal is non-insulated, the process does not raise the temperature of the juice by 18°
C as the Complaint asserts, and once the pressure treatment is done, the water is drained and the
juice immediately returns to a temperature of 4-5° C.  (*Id*.)  As a result of the process used by
Daily Greens, the juice never reaches a temperature above 19-20° C.  (*Id*. ¶ 6)   This temperature
is well below room temperature most times of the year in Austin, Texas, and well below the
temperatures in Texas and Mexico where the greens used in the juices are grown.  (*Id*.)

> **B.**     **Plaintiff's Lawyers Knew before Filing the Complaint that HPP Does Not
> "Pasteurize" or Destroy the Nutrients in Daily Greens' Products**

In addition to making inaccurate allegations without investigation, the Complaint, FAC,
and SAC attempt to conceal material information that separately undermines the entire case.
Plaintiff's lawyers have long known that HPP does not "pasteurize" juice or destroy its nutrient
content, as alleged in the SAC.  This is true as a matter of science, law and FDA regulations.

> **1.**     **A District Court Dismissed Identical Claims Because It Found
> Plaintiff's Lawyers Were Aware of the Science that Refutes Them**

In 2014, Plaintiff's lawyers made identical claims against Hain Celestial Group in an
action styled *Alamilla v. Hain Celestial Group*, 30 F.Supp.3d 943 (N.D. Cal. 2014). (Hagey
Decl., Ex. 3.)  They contended that Hain's high-pressure treatment materially altered the
nutritional content of Hain's juice, and further asserted that as a result, Hain's representation that
its product was not pasteurized was deceptive and improper.  *Hain*, 30 F. Supp. 3d at 943.  Those
claims were dismissed with prejudice by the Honorable Vincent Chhabria in the Northern
District of California pursuant to Hain's Rule 12(b)(6) motion.  *Id*. at 944.

In *Hain*, the Court not only dismissed the case at the pleading stage, but also denied leave
to amend.  *Id*. The Court found that the complaint had cited articles showing that Plaintiff's
lawyers were aware of the science that foreclosed the claims and allegations in suit.  *Id*. The

Court explained that the "complaint quotes and incorporates by reference an article that concludes that pressurization has 'little or no effects on nutritional and sensory quality aspects of foods.' Eamonn Hogan et al., High Pressure Processing of Foods: An Overview, in Emerging Technologies for Food Processing 3, 27 (Da-Wen Sun ed., 2005)." *Id*. Judge Chhabria further found that the Hogan article and another article cited in the pleading eliminated any argument that high-pressure treatment materially alters the nutrition content of fresh juice:

> [B]oth articles repeatedly make the point that pressurization has less impact on nutritional value than pasteurization. *See, e.g., id.* at 19 (noting that pressurization "maintains the quality of fresh foods, with few direct effects on flavor and little effect on nutritional quality"); id. at 26 ("A clear advantage of pressure treatment is . . . the stability of small molecules, such as nutrients."); Margaret F. Patterson et al., Introduction to High Pressure Processing of Foods, in Emerging Technologies for Food Processing 1, 9 (Christopher J. Doona et al. eds., 2007) (explaining that foods treated with pressurization "retain more of their original fresh taste, texture, and nutritional content such that these products are often superior in quality compared to their thermal processing counterparts").

*Id*. The Court's Opinion further noted that "plaintiffs did not include this conclusion (or the other quotations from the articles cited in this order) in their complaint." *Id*.

As a result of the science that Plaintiff's lawyers have now known about for over two years, Judge Chhabria held that the claims were untenable at their core and could not be cured by any amendment. He explained: "The articles the plaintiffs cite thus contradict the allegation upon which their entire complaint hinges — namely, that pressure treatment deprives juice of nutritional value to a similar degree as pasteurization." *Id*. As Your Honor previously explained, "almost three years have elapsed since the dismissal of the complaint in *Alamilla v. Hain Celestial Group, Inc.*, during which Plaintiff's counsel had the opportunity to craft a complaint in this action which would respond to the reasons for the dismissal of the complaint in the Northern District of California." (May 24, 2017, Order, Dkt. 25.)

6

In an effort to avoid dismissal here, Plaintiff's lawyers have omitted reference to any scientific study supporting their knowingly false allegation that HPP materially alters the juice. Instead of selectively misquoting the articles, as they did before Judge Chhabria, they have simply made factual allegations without any support here, in an effort to mislead this Court.

### 2.     Plaintiff's Lawyers Know that HPP Is Not Heat Pasteurization

The pleadings also attempt to mislead the Court by referring to Daily Greens' juice as subjected to "pasteurization" or "pasteurized." (*E.g.*, Compl. ¶¶ 33-34; SAC ¶¶ 106-110.) Plaintiff's lawyers are aware, however, that such allegation is untrue.

The FDA requires that raw fruit or vegetable juice must be subject to a methodology that creates a 5-log reduction of pathogens.  21 C.F.R. § 120.24(a).  Pasteurization is one allowed method.  So is HPP.  As explained in the *FDA Guidance for Industry: The Juice HACCP Regulation - Questions & Answers* (Aug. 31, 2001), HPP is considered an alternative to pasteurization, not a form of pasteurization as the Complaint alleges.  For example, Question 37 of the FDA Guidance reads:

> 37. How can I achieve a 5-log reduction <u>without pasteurizing</u> the product?
>
> You can achieve a 5-log reduction by using control measures that have been shown to be effective in reducing the number of microorganisms. *<u>You can use one control measure that has been shown to reduce the pertinent microorganism by at least 5-log (e.g., high pressure)</u>* or a combination of control measures that have a cumulative effect of a 5-log reduction.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ucm072981.htm#E (emphasis added). (Hagey Decl., Ex. 4.)   The Guidance separately indicates that pasteurization involves exposing a substance to a high level of heat and then cooling it to destroy bacteria.  (*Id.* at Q36.)

Other federal regulations addressing "pasteurization" reiterate that pasteurization requires heating a product to a temperature that destroys pathogens. *E.g.*, 21 C.F.R. § 131.3(b) (Milk and Cream) (product must be heated at least 145° for half an hour (or at higher temperatures for shorter periods) to qualify as pasteurized); 21 C.F.R. § 133.3(d) (Cheeses and Related Cheese Products) (same); 21 C.F.R. § 146.140 (Pasteurized Orange Juice) ("The orange juice is so treated by heat as to reduce substantially the enzymatic activity and the number of viable microorganisms.").  Under FDA training standards for juice, pasteurization is performed by exposing a juice to a temperature of at least 160º F, depending on the type of juice. http://www.accessdata.fda.gov/ORAU/Pasteurization/PAS_04_000.htm.  The FDA's definitions of pasteurization are consistent with those in the dictionary.[3]

As this Court noted, "regulatory and lay authorities indicate that pasteurization is a heat/thermal treatment – unlike HPP, a process that eliminates harmful pathogens through the application of pressure, not heat." (September 4, 2018 Memorandum and Order Granting Motion to Dismiss; ECF 46 at 9.)  As noted below, Plaintiff's lawyers were already put on notice that Daily Greens' HPP process does not create temperatures anywhere near to the temperatures at which the ingredients are grown, much less those necessary to kill pathogens.  And it cites no scientific evidence to suggest that Daily Greens' process would be a method of performing "pasteurization."

---

[3] Dictionary definitions are similar to the FDA's.  *See*, *e.g.*, https://www.merriam-webster.com/dictionary/pasteurization (defining "pasteurization" as "partial sterilization of a substance and especially a liquid (as milk) at a temperature and for a period of exposure that destroys objectionable organisms"); http://www.dictionary.com/browse/pasteurization?s=t (defining "pasteurize" as "to expose (a food, as milk, cheese, yogurt, beer, or wine) to an elevated temperature for a period of time sufficient to destroy certain microorganisms").

C.        **Plaintiff Was Not Misled About How Daily Greens' Products Are Made**

Plaintiff's claims are separately untenable because his own pleading shows he was not misled by Daily Greens' packaging and/or advertising.  By citing the company's website and other materials, the Complaint admits that Daily Greens has gone to great lengths on both its label and website to explain that its juices are made through HPP, and not heat pasteurization.

First, on the labels of the products, Daily Greens' juices state in large, boldface letters: "**High Pressure Processed**."  (Hagey Decl., Ex. 5.)  Thus, if Plaintiff read the label, as he alleges he did, there is no possibility he could have been unaware of how the juice was prepared. Instead, the SAC contained deliberatively cropped images intended to deceive this Court. This Court aptly observed, "[t]he images Campbell included in the Second Amended Complaint are carefully cropped, failing to include the portion of the Products' label [disclosing HPP]." (Order at 3-4.)

Second, the Complaint alleges that before Plaintiff bought his unspecified "product," he read and relied on the www.drinkdailygreens.com website.  (SAC ¶ 70.)  The website has an FAQ section which explains the way Daily Greens' juice is processed.  It states: "Our juicer cuts whole organic produce into pulp, then extracts every bit of juice from it by applying high pressure — without heat or spinning — to extract maximum nutrition."  (Hagey Decl., Ex. 6.)

Other parts of the website reiterate that Daily Greens uses high-pressure processing.  For example, the "Farm to Juice" page explains "each bottle is placed in our high pressure processor (HPP) to make our juice safe while maintaining maximum nutrition," and the page detailing the individual products explains: "Never heated; High Pressure Processed (HPP)."  (*Id*., Exs, 7, 8.)

If Plaintiff did actually care about how the juice was processed, and did actually read the website as he said he did, he would have to consciously avoid the multiple descriptions of Daily Greens' HPP to remain ignorant of how the juice is processed.  Under these circumstances,

Plaintiff could not possibly have been misled about how the juice he supposedly purchased was processed.

Finally, Plaintiff's claim that he thought the term "unheated" somehow meant that Daily Greens' processing did not in any way alter the temperature of the juice could not have been material to him, much less uniformly important to a supposed "class" of consumers.  As a matter of physics, any energy applied in the pressing process or pressure will nominally increase the temperature of the juice.  As Plaintiff and his lawyers know, such increase does not materially alter the products,[4] and as explained above, Daily Greens has taken great pains to ensure that its juices never even reach ambient temperature, much less the temperatures at which the ingredients are actually grown.

### D.    Daily Greens' Efforts to Avoid Bringing This Motion

On March 15, 2017, Daily Greens sent Plaintiff's lawyers a letter fully explaining Daily Greens' HPP process, noting that Plaintiff had submitted a false and misleading pleading to this Court, and asking that it be dismissed.  (Hagey Decl., Ex. 9.)  Pursuant to Daily Greens' standard company policy, Daily Greens also sent Plaintiff a check for a full refund of any and all purchases for which he was somehow dissatisfied – regardless of his mistaken claims.  (*Id*.)  The letter asked for a timely response so that Daily Greens would not have to incur further legal fees.  (*Id*.)  Plaintiff's lawyers never responded.  (*Id*. at 6.)  Nor did Plaintiff cash the refund check.  On

---

[4] The articles Plaintiff's lawyers previously cited, but are now attempting to conceal, illustrate this.  For example, the Hogan article at page 3 states that high-pressure processing is a "non-thermal" process.  It further states high-pressure processing is "an alternative technology to heat treatments" (*id*.) and that it has gained popularity because "[a]lthough heating food effectively reduces levels of microorganisms such as bacteria, such processing can alter the natural taste and flavour of food and destroy vitamins."  (*Id*. at 4.)  It further explains that high-pressure processing can "provide safe, fresher-tasting, nutritive foods without the use of heat or chemical preservatives" (*id*.) and that "[u]nlike heat treatment, HP treatment does not reduce the quality of foods." (*Id*. at 4, 19.)

March 30, 2017, Daily Greens served this Rule 11 Motion on Plaintiff. Plaintiff failed to withdraw his false allegations and instead re-alleged the allegations, first in a FAC lodged with the Court on May 25, 2017 (ECF 26-2) and then in the SAC, filed with the Court on June 8, 2017. (ECF 30.)

## ARGUMENT

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985). Rule 11 imposes an objective standard. *Id*. ("Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.").

The purpose of Rule 11 "is to ensure that an attorney will 'stop, think and investigate' before filing 'baseless papers.'" *Smith v. Westchester Cty. Dep't of Corr.*, 2013 WL 5192751, at *6 (S.D.N.Y. Sept. 16, 2013).  The Rule is violated whenever a party has filed a baseless pleading or comes to learn that a pleading is false. *Prim v. Peatco Ltd. L.P.*, Case No. 90-cv-7272, 1994 WL 570754, at *6 (S.D.N.Y. Oct. 17, 1994) (imposing Rule 11 sanctions after plaintiffs persisted with action despite being informed they had sued wrong party).

## I.    PLAINTIFF AND HIS LAWYERS VIOLATED RULE 11 BECAUSE THE COMPLAINT, FAC, AND SAC CONTAIN KNOWINGLY FALSE ALLEGATIONS OF FACT

As shown above, the Complaint, FAC, and SAC allege that Daily Greens' juice is heated, that the juice is pasteurized, and that Daily Greens' statements to the contrary materially misled Plaintiff into buying some unidentified product(s).  (SAC ¶¶ 70-73, 106-110.)  As shown above, all those statements – all of which go to the very heart of this case – are knowingly false.  On March 15, 2017, Daily Greens informed Plaintiff's lawyers that these allegations were untrue

and detailed Daily Greens' production process – which Plaintiff's lawyers had never even

investigated before filing suit.  Even then, Plaintiff's lawyers did not withdraw their false

allegations.  In fact, they failed to respond to Daily Greens' letter at all with the goal of forcing

Daily Greens to incur needless legal costs. Daily Greens then served Plaintiff with the Rule 11

motion on March 30, 2017. Rather than withdraw the Complaint, Plaintiff reasserted the same

knowingly false statements in a FAC and SAC.

 Failure to make a diligent factual inquiry presents a textbook violation of Rule

11(11)(b)(3).  As one Court explained:

> The evidentiary foundation upon which an attorney rests his
> assertions of fact is, for the most part, exclusively within the
> control of the attorney and his client. In order to function, the court
> must repose trust in the attorneys who come before it to make
> factual representations supported by evidence . . . An attorney who
> abuses the trust of the court in this manner, and who causes such
> delay and needless expense thereby, should be penalized.

*In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y. 2007); *Perry v. S.Z.*

*Rest. Corp.*, 45 F. Supp. 2d 272, 275 (S.D.N.Y. 1999) (counsel's claims of learning facts for the

first time are not an excuse for avoiding sanctions, as such facts should have emerged in a

"reasonable" inquiry prior to bringing suit); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F.

Supp. 2d 209, 229 (E.D.N.Y. 2002) (awarding sanctions because "a reasonable inquiry

conducted prior to filing the Amended Complaint would have shown that the allegation that

defendants breached a promise to bridge plaintiff's years of service at Manhattan Cable lacked

evidentiary support").

 Further, even if Plaintiff and his lawyers had performed any investigation of their claims,

after they learned that the claims were false, they had a separate duty under Rule 11 to withdraw

them.  *E.g.*, *Gambello*, 186 F. Supp. 2d at 229 (imposing sanctions after plaintiff's lawyers

refused to withdraw claim after learning it was factually inaccurate); *Prim*, 1994 WL 570754, at

*6 (imposing sanctions where "After the answer was filed and after communicating with counsel

for Peatco Limited, Sandler should have become aware of the dispositive factual errors in the

complaint.").

## II.      PLAINTIFF AND HIS LAWYERS VIOLATED RULE 11 BECAUSE ANOTHER COURT ALREADY TOLD THEM THE CLAIMS ARE MERITLESS

What makes Plaintiff's lawyers' conduct all the more egregious is that they knew their

claims were legally untenable because a federal judge had already dismissed them without leave

to amend because they had cited scientific evidence that refuted their own claims.  In their filing

here, they are willfully concealing that evidence from this Court.  That is a separate and

independent ground for sanctions; *viz*., the prior dismissal also put Plaintiff's lawyers on notice

that the claims had no possibility of success in light of the operative facts.  *See*, *e.g*., *Pentagen

Techs. Int'l., Ltd. v. United States*, 172 F. Supp. 2d 464, 471-72 (S.D.N.Y. 2001) (imposing

sanctions on plaintiff's lawyers for "[i]gnoring adverse judgments" and filing successive lawsuits

that were "designed to evade previous rulings" and that caused "needless occupation of judicial

resources").

## III.     THE COURT SHOULD IMPOSE SANCTIONS

Rule 11 sanctions may be imposed against a party who "'had actual knowledge that filing

the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an

improper purpose.'"  *Lipin v. Nat'l Union Fire Ins. Co*., 202 F. Supp.2d 126, 140 (S.D.N.Y.

2002) (internal citation omitted).  Where a party knows, and an attorney reasonably should

know, that a filing is wrongful, sanctions against both are appropriate.  *Watkins v. Smith*, No. 12

CIV. 4635 DLC, 2013 WL 655085, at *11 (S.D.N.Y. Feb. 22, 2013), aff'd 561 F. App'x 46 (2d

Cir. 2014).

Pursuant to Rule 11, this Court has "broad discretion" to "tailor[ ] appropriate and reasonable sanctions under [R]ule 11," including an award of attorney's fees.  Fed. R. Civ. 11(c)(2); *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010) (internal citations omitted).  Here, the Court should make Plaintiff and his lawyers at least pay all the attorney's fees and costs they forced Daily Greens to incur through their frivolous filing.

## **CONCLUSION**

For the foregoing reasons, the Court should sanction Plaintiff and his lawyers.


Dated: November 2, 2018                    **BRAUNHAGEY & BORDEN LLP**


                                           /s/ J. Noah Hagey
                                           By:  J. Noah Hagey

                                           7 Times Square, 27th Floor
                                           New York, NY 10036
                                           Tel./Fax: (646) 829-9403
                                           hagey@braunhagey.com

                                           *Attorneys for Defendant Drink Daily Greens, LLC*

14