# EXHIBIT 9

# BRAUNHAGEY & BORDEN LLP

San Francisco & New York

**J. Noah Hagey, Esq.**
hagey@braunhagey.com

March 15, 2017

**VIA EMAIL AND FIRST CLASS U.S. MAIL**

Joshua Levin-Epstein, Esq.
Levin Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Joshua@levinepstein.com

Spencer Sheehan, Esq.
891 Northern Blvd, Suite 201
Great Neck, NY 11021
Spencer@spencersheehan.com

Re:   *Campbell v. Drink Daily Greens, LLC*, 16-cv-7176-ILG-PK (SDNY)

Dear Counsel:

We have been retained as litigation counsel for Defendant Drink Daily Greens, LLC ("DDG") in the above-captioned matter.

We now have had the opportunity to review the complaint you jointly signed. As detailed below, the complaint contains false allegations of fact made without basis or investigation and appears to be a mirror image of complaints brought by your firms that were dismissed by other federal courts. For the reasons stated below, we ask that you withdraw the Complaint. If you do not do so, we will seek legal redress from the Court, including pursuant to Rule 11.

By way of background, DDG is a small woman-run business based in Austin, Texas that sells organic juices. Its founder, Shauna Martin, started the company after surviving breast cancer when her son was one year old. As part of her recovery from ten surgeries and extensive chemotherapy, Shauna began drinking green juice for its healing power, and her business followed. DDG only uses organic, fair-trade, non-GMO ingredients. The company recycles all the organic wastes from its juicing process, often at a worm farm where it is transformed back into organic soils and fertilizers. Its juicing facility only uses cleaning agents and manufacturing processes that are sustainable and do not pollute the environment. And a portion of all its sales goes to fighting breast cancer.

March 15, 2017
Page 2

Your "client" Gerard Campbell is an inveterate litigant who has agreed to be the plaintiff in at least three cut-and-paste lawsuits at the behest of your firm(s). Each of those actions identically alleges that Campbell was fooled into buying juices that were treated at high pressure because they were "heated" and "pasteurized." These allegations were made without any investigation into the process DDG actually uses – which *does not* heat the juice. Moreover, as you know, the FDA itself has determined that high-pressure treatment is not pasteurization, and the process does not materially affect the nutritional content of juice. Both the label and website Campbell claims to have read explain that DDG's juices are made by high-pressure processing. Accordingly, even if Campbell was a bona fide customer (and not a captive plaintiff), there is no way he could have been misled about the way DDG's juices are made. Nor could any supposed "class" of consumers have been misled. He and everyone else who buys DDG products receive exactly what they bargain for – a healthy and delicious product. Accordingly, the complaint should be dismissed without further waste of judicial or party resources.

### A. Your Allegations that DDG Juices Are "Heated" Are False

Your complaint alleges many times that DDG's juices are "heated." (Compl. ¶ 37.) This is false. You made these false allegations without performing any investigation of the process that DDG actually uses in violation of Rule 11. In actuality, DDG's juice never even reaches ambient temperature in the production process, much less a temperature that would pasteurize the juice, as you have also alleged.

So that you cannot later claim to have been unaware of the true facts, the following describes DDG's unique production process: First, to ensure that its juice is never heated, DDG goes well beyond other companies and refrigerates its entire facility to a temperature between 32-41°. The juice is cold-pressed, bottled, capped and sealed at this temperature. Second, after the juice is cold-pressed, it is placed in a non-insulated steel vessel. The vessel is then filled with water chilled to 4-5° C, just above freezing temperature. While in this cold bath, the juice is subjected to hydraulic high-pressure processing for two minutes (not 3-10 as you claim in ¶ 25 of your Complaint). Because the metal is non-insulated, the process does not raise the temperature of the juice by 18° C as your Complaint asserts, and once the pressure treatment is done, the water is drained and the juice immediately returns to a temperature of 4-5° C. As a result of the process used by DDG, the juice never reaches a temperature above 19-20° C. This temperature is well below room temperature most times of the year in Austin, Texas, and well below the temperatures in Texas and Mexico where the greens used in the juices are grown.

### B. You Already Know that High-Pressure Treatment Does Not "Pasteurize" or Destroy the Nutrients in DDG's Products

In addition to making reckless and inaccurate allegations without investigation, your Complaint attempts to conceal material information that separately undermines your entire case. Your law firms (and presumably your client) have known for a long time that high-pressure treatment does not "pasteurize" juice or destroy its nutrient content, as alleged in the complaint you signed. This is true as a matter of science, law and FDA regulations. The subject complaint was drafted in such a way as to try to hide these facts from the Court. This is a separate and independent reason why your Complaint is not only dismissible but subject to Rule 11 sanctions.

March 15, 2017
Page 3

### 1. One District Court Dismissed Your Claims with Prejudice Because It Found You Were Aware of the Science that Refutes Them

In 2014, your firms made identical claims against Hain Celestial Group contending that its high-pressure processing was somehow deceptive and improper. Those claims were dismissed with prejudice by the Honorable Vincent Chhabria in the Northern District of California pursuant to Hain's Rule 12(b)(6) motion. A courtesy copy of that decision in *Alamilla v. Hain Celestial Group*, No. 13-cv-05595-VC (N.D. Cal. 2014), is attached as **Exhibit 1**. Your client should be advised of that decision if he is not already aware of it.

In *Hain*, the Court not only dismissed your case at the pleading stage, but also denied leave to amend. It found that your complaint had cited articles showing that your firms were aware of the science that foreclosed the claims and allegations in suit. (*Id* at 1.) The Court explained that your "complaint quotes and incorporates by reference an article that concludes that pressurization has 'little or no effects on nutritional and sensory quality aspects of foods.' Eamonn Hogan et al., High Pressure Processing of Foods: An Overview, in Emerging Technologies for Food Processing 3, 27 (Da-Wen Sun ed., 2005)." (*Id*. at 2.) Judge Chhabria further found that the Hogan article and another article cited in your pleading eliminated any argument that high-pressure treatment materially alters the nutrition content of fresh juice:

> [B]oth articles repeatedly make the point that pressurization has less impact on nutritional value than pasteurization. See, e.g., id. at 19 (noting that pressurization "maintains the quality of fresh foods, with few direct effects on flavor and little effect on nutritional quality"); id. at 26 ("A clear advantage of pressure treatment is . . . the stability of small molecules, such as nutrients."); Margaret F. Patterson et al., Introduction to High Pressure Processing of Foods, in Emerging Technologies for Food Processing 1, 9 (Christopher J. Doona et al. eds., 2007) (explaining that foods treated with pressurization "retain more of their original fresh taste, texture, and nutritional content such that these products are often superior in quality compared to their thermal processing counterparts").

(*Id*. at 2.) The opinion further noted that "plaintiffs did not include this conclusion (or the other quotations from the articles cited in this order) in their complaint." (*Id*.)

As a result of the science you have now known about for over two years, Judge Chhabria held that your claims were untenable at their core and could not be cured by any amendment. He explained: "The articles the plaintiffs cite thus contradict the allegation upon which their entire complaint hinges — namely, that pressure treatment deprives juice of nutritional value to a similar degree as pasteurization." (*Id*.)

In an effort to avoid dismissal here, you have attempted to mislead Judge Glasser. Instead of selectively misquoting the articles, as you did before Judge Chhabria, you have now omitted those articles from your boilerplate pleading altogether, without citing any scientific proof for your assertion that high-pressure treatment somehow materially alters the nutritional

March 15, 2017
Page 4

content of DDG's juices.  Not only are such claims meritless, they are knowingly misleading.  It has long been known that pressure treatment does not materially alter the nutritional value of the juice.  *E.g.*, Ankit Patras, Nigel Brunton, Sara Da Pieve, Francis Butler, and Gerard Downey, *Effect Of Thermal And High Pressure Processing On Antioxidant Activity And Instrumental Colour Of Tomato And Carrot Purées*, Innovative Food Science and Emerging Technologies (2008); G. Donsi; O. Ferrari, and M. Matted, *High Pressure Sterilization of Orange Juice*, Italian Food and Beverage Technology (1996); Caroline Morris, Aaron L. Brody* and Louise Wicker, *Non-Thermal Food Processing/PreservationTechnologies: A Review with Packaging Implications*, Packag. Technol. Sci. (2007).

### 2. High-Pressure Treatment Is Not Pasteurization

Your current complaint also attempts to mislead the Court by referring to DDG's juice as "pasteurized." (*E.g.*, Compl. ¶¶ 33-34.)  But your firms are specifically aware that such allegation is untrue.

For context, the FDA requires that raw fruit or vegetable juice must be subject to a methodology that creates a 5 log reduction of pathogens.  21 C.F.R. § 120.24(a).  Pasteurization is one allowed method.  So is high-pressure treatment.

As explained in the *FDA Guidance for Industry: The Juice HACCP Regulation - Questions & Answers* (Aug. 31, 2001), high-pressure treatment is considered an alternative to pasteurization, not a form of pasteurization as you allege.  For example, Question 37 of the FDA Guidance reads:

> **37. How can I achieve a 5-log reduction <u>without pasteurizing</u> the product?**
>
> You can achieve a 5-log reduction by using control measures that have been shown to be effective in reducing the number of microorganisms. *You can use one control measure that has been shown to reduce the pertinent microorganism by at least 5-log (e.g., high pressure)* or a combination of control measures that have a cumulative effect of a 5-log reduction.

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ucm072981.htm#E (emphasis added).

Pasteurization involves exposing a substance to a high level of heat and then cooling it to destroy bacteria.  *Id*. at Q36.[1]  Under FDA training standards for juice, pasteurization is performed by exposing a juice to a temperature of at least 160º C, depending on the type of juice.  http://www.accessdata.fda.gov/ORAU/Pasteurization/PAS_04_000.htm.

---

[1] Dictionary definitions are similar to the FDA's.  *See*, *e.g.*, https://www.merriam-webster.com/dictionary/pasteurization (defining "pasteurization" as "partial sterilization of a substance and especially a liquid (as milk) at a temperature and for a period of exposure that destroys objectionable organisms"); http://www.dictionary.com/browse/pasteurization?s=t (defining "pasteurize" as "to expose (a food, as milk, cheese, yogurt, beer, or wine) to an elevated temperature for a period of time sufficient to destroy certain microorganisms").

March 15, 2017
Page 5

      Your firms already know that high pressure treatment does not create temperatures exceeding 160° C.  Nor does your complaint even allege that to be the case as to DDG's high-pressure treatment.  Rather, the complaint admits a temperature increase of only 18º C (which is, itself, false), and cites no scientific evidence to suggest that such a process would be a method of performing "pasteurization."

      **C.**     **Campbell Was Not Misled about How DDG's Products Are Made**

      Campbell's claims are separately untenable because his own pleading shows he was not misled by DDG's packaging and/or advertising.  By citing the company's website and other materials, the complaint admits that DDG has gone to great lengths on both its label and website to explain that its juices are made through high-pressure processing, and not heat pasteurization.

      First, on the labels of the products, DDG's juices state in large, boldface letters: "**High Pressure Processed**."  Thus, if he read the label, as he alleges he did, there is no possibility that Campbell could have been unaware of how the juice was prepared.

      Second, the complaint alleges that before Campbell bought his juice, he read and relied on the www.drinkdailygreens.com website.  (Compl. ¶¶ 67-68.)  The website has an FAQ section which explains the way DDG's juice is processed.  It states: "Our juicer cuts whole organic produce into pulp, then extracts every bit of juice from it by applying high pressure — without heat or spinning — to extract maximum nutrition."

      Other parts of the website reiterate that DDG uses high-pressure processing.  For example, the "Farm to Juice" page explains "each bottle is placed in our high pressure processor (HPP) to make our juice safe while maintaining maximum nutrition," and the page detailing the individual products explains: "Never heated; High Pressure Processed (HPP)."

      If Campbell did actually care about how the juice was processed, and did actually read the website as he said he did, he would have to consciously avoid the multiple descriptions of DDG's high-pressure treatment to remain ignorant of how the juice is processed.  Under these circumstances, Campbell could not possibly have been misled about how the juice he supposedly purchased was processed.

      Finally, Campbell's claim that he thought the term "unheated" somehow meant that high-pressure processing did not in any way alter the temperature of the juice could not have been material to him, much less uniformly important to a supposed "class" of consumers.  As a matter of physics, any energy applied in the pressing process or pressure will nominally increase the temperature of the juice.  Such increase does not materially alter the products,[2] and as explained

---

[2] In addition to the articles cited in this letter, the articles you are attempting to conceal from Judge Glaser refute your assertions that high-pressure processing somehow constitutes heating or materially changes the juice.  For example, the Hogan article at page 3 states that high-pressure processing is a "non-thermal" process.  It further states high-pressure processing is "an alternative technology to heat treatments" (*id*.) and that it has gained popularity because "[a]lthough heating food effectively reduces levels of microorganisms such as bacteria, such processing can alter the natural taste and flavour of food and destroy vitamins."  (*Id*. at 4.)  It further explains that high-pressure

March 15, 2017
Page 6

above, DDG has taken great pains to ensure that its juices never even reach ambient temperature, much less the temperatures at which the fruit is actually grown.

*   *   *

Campbell's claims are materially false and the subject complaint is subject to dismissal for all of the reasons set forth above. Further, pursuant to DDG's standard company policy, it is hereby enclosing a check for $100 representing a full refund of any and all purchases for which Campbell was somehow dissatisfied – regardless of his mistaken claims. Meanwhile, the complaint should be dismissed with prejudice.

Please let us know how you wish to proceed by no later than close of business, **March 17, 2017**.

In the meantime, please preserve all evidence relevant to this dispute, including all advertisements, notices and/or solicitations by your office(s) seeking plaintiffs, all communications with Campbell, all receipts and documentation related to Campbell's purported claims, and all documentation of your pre-suit investigation of DDG's process.

DDG reserves all rights, claims, remedies and defenses.

Very truly yours,

J. Noah Hagey

---

processing can "provide safe, fresher-tasting, nutritive foods without the use of heat or chemical preservatives" (id.) and that "[u]nlike heat treatment, HP treatment does not reduce the quality of foods." (*Id*. at 4, 19.)

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL F. ALAMILLA, et al.,<br>　　Plaintiffs,<br>　　v.<br>HAIN CELESTIAL GROUP, INC., et al.,<br>　　Defendants. | Case No. 13-cv-05595-VC<br><br>**ORDER OF DISMISSAL WITH PREJUDICE**<br><br>Re: Dkt. Nos. 35, 37 |

　　　　Plaintiffs Samuel Alamilla and Colleen King bring this putative class action against Defendants Hain Celestial Group, Inc., BluePrint Wholesale LLC, and ZSBPW LLC, alleging the defendants' juice products were misleadingly labeled and advertised. The plaintiffs identify several allegedly misleading representations on the products' labels and on the defendants' website: that the juices are "100% Raw," "Raw and Organic," and/or "Unpasteurized"; that "cooking juice" (i.e., pasteurization) kills vitamins and enzymes; that "juice should never be cooked"; and that the defendants' juices are not cooked because they are treated with pressure, rather than heat.

　　　　The plaintiffs concede these representations are not literally false. (Opp'n 20). They acknowledge, for example, that "cooking" juice indeed deprives it of nutritional value and that the defendants do not pasteurize or otherwise "cook" their juice products. But the plaintiffs contend that just like pasteurization, the pressure treatment used by the defendants deprives juice of nutritional value, and that because the defendants do not disclose this, their representations about not cooking juice are misleading. Specifically, the complaint asserts that the effects of the pressure treatment "are similar to those of cooking and pasteurization, namely the destruction of vitamins, nutrients, live enzymes, nutritional value, and health benefits." (Compl. ¶ 4). The complaint also alleges that juice treated with pressure is "in fact, equivalent to . . . cooked juice" with respect to nutritional and health benefits (or lack thereof).

　　　　On their own, these allegations state a plausible claim that the defendants' representations

could lead a reasonable consumer to conclude incorrectly that pressure treatment does not deprive juice of its nutritional value in the same way that pasteurization does. But the complaint incorporates by reference two articles that contradict this claim. In particular, the complaint quotes and incorporates by reference an article that concludes that pressurization has "little or no effects on nutritional and sensory quality aspects of foods." Eamonn Hogan et al., *High Pressure Processing of Foods: An Overview*, in *Emerging Technologies for Food Processing* 3, 27 (Da-Wen Sun ed., 2005). Although the plaintiffs did not include this conclusion (or the other quotations from the articles cited in this order) in their complaint, the parties agreed at the hearing that the plaintiffs have incorporated by reference the entire text of the articles they quote in their complaint.

The plaintiffs argued at the hearing that the articles they cite do not in fact support this conclusion. To the contrary, both articles repeatedly make the point that pressurization has less impact on nutritional value than pasteurization. *See, e.g., id.* at 19 (noting that pressurization "maintains the quality of fresh foods, with few direct effects on flavor and little effect on nutritional quality"); *id.* at 26 ("A clear advantage of pressure treatment is . . . the stability of small molecules, such as nutrients."); Margaret F. Patterson et al., *Introduction to High Pressure Processing of Foods*, in *Emerging Technologies for Food Processing* 1, 9 (Christopher J. Doona et al. eds., 2007) (explaining that foods treated with pressurization "retain more of their original fresh taste, texture, and nutritional content such that these products are often superior in quality compared to their thermal processing counterparts"). The articles the plaintiffs cite thus contradict the allegation upon which their entire complaint hinges—namely, that pressure treatment deprives juice of nutritional value to a similar degree as pasteurization. Courts "need not accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-989 (9th Cir. 2001) (internal quotation marks omitted).

Accordingly, the complaint is dismissed with prejudice.

2

**IT IS SO ORDERED.**

Dated: July 2, 2014

_____
VINCE CHHABRIA
United States District Judge

United States District Court
Northern District of California

3

BRAUNHAGEY & BORDEN LLP
220 SANSOME ST, FL 2
SAN FRANCISCO, CA 94104
(415) 599-0210

5869

11-8166/3210
95

DATE 3/15/2017

PAY TO THE ORDER OF  Levin Epstein & Associates, P.C.    $ 100.xx

one hundred and xx/100                                    DOLLARS

First Republic Bank
Private Banking-San Francisco
111 Pine Street
San Francisco, CA 94111
Ph (415) 392-1400 / (800) 392-1407 (24hr Cust Serv)

FOR Gerard Campbell

⑆005869⑆ ⑈321081669⑈ 8000109039⑈