United States District Court
Eastern District of New York

1:16-cv-07176-ILG-PK

Hon. Leo I. Glasser

Gerard Campbell, individually and on behalf of all others similarly situated

                              Plaintiff

                  - against -

Drink Daily Greens LLC

                              Defendant

Plaintiff's Opposition to Defendant's Motion for Sanctions

Levin-Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Counsel for Plaintiffs

Table of Contents

TABLE OF AUTHORITIES ...................................................................................................II

INTRODUCTION ............................................................................................................... 5

I.      REQUIREMENTS FOR SANCTIONS UNDER RULE 11 ................................... 5

II.     SANCTIONS SHOULD BE DENIED DUE TO PROCEDURAL AND
        SUBSTANTIVE ISSUES ...................................................................................... 5

        A.   Non-Compliance with the "Safe Harbor" Requires Denial of Motion ................... 6

        B.   Warning Letter Prior to Filing the Sanctions Motion did not Trigger
             Safe Harbor .......................................................................................................... 8

        C.   Rule 11 Motion was not Filed Separately .......................................................... 10

        D.   Defendant's Claim that it Only Served the March 30, 2017
             Sanctions Motion is Inadequate to Show Compliance with Rule 11 ................... 11

        E.   The Sanctions Motion Defendant Purportedly Served on March 30,
             2017 is a Different Motion than the November 2, 2017 Motion ......................... 12

        F.   Defendant's Non-Compliance with Court Rules Stymied Plaintiff's
             Efforts to Take Corrective Action ...................................................................... 14

III.    FACTUAL SUPPORT EXISTED FOR PLAINTIFF'S CLAIMS DESPITE
        DISMISSAL WITH PREJUDICE ....................................................................... 15

        A.   Defendant Cannot Show the Representations Were Made for an
             Improper Purpose ............................................................................................... 16

        B.   No Res Judicata Effect of *Alamilla* ................................................................... 17

        C.   Evidentiary Support and Existing Law Existed to Support Plaintiff's
             Claims ................................................................................................................ 18

        D.   Plaintiff did not Allege the Products are Subjected to Thermal
             Treatment ........................................................................................................... 20

        E.   Allegations Distinguished Pasteurization When Referring to a Food
             Safety Effect from the Commonly Understood Heat Pasteurization ................... 20

        F.   Plaintiff's Allegations for an Extension or Modification of Existing
             Law were Nonfrivolous ...................................................................................... 22

CONCLUSION .................................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Cases**

*Alamilla v. Hain Celestial Group, Inc.*,
  30 F.Supp.3d 943 (N.D. Cal. 2014) ...................................................................... 18

*Avent v. Solfaro*,
  223 F.R.D. 184 (S.D.N.Y. 2004) ........................................................................... 11

*Black v. Covidien*,
  No. 17-cv-6085 (W.D.N.Y. July 2, 2018) ............................................................ 10

*Campbell v. Freshbev LLC*,
  No. 16-cv-7119, 2018 WL 3235768
  (E.D.N.Y. July 3, 2018) ....................................................................................... 22

*Carruthers v. Flaum*,
  450 F.Supp.2d 288 (S.D.N.Y. 2006) .......................................................... 7, 15, 16

*Castro v. Mitchell*,
  727 F.Supp.2d 302 (S.D.N.Y. 2010) .................................................................... 10

*Divane v. Krull Elec. Co., Inc.*,
  200 F.3d 1020 (7th Cir. 1999) .............................................................................. 12

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................................ 22

*Gal v. Viacom Int'l, Inc.*,
  403 F.Supp.2d 294 (S.D.N.Y. 2005) ............................................................... 7, 10

*Gonzalez v. Pioneer Industrial Systems, LLC*,
  No. 15-cv-11583 (N.D. Ill. Apr. 6, 2017) ........................................................... 12

*Healey v. Chelsea Res., Ltd.*,
  947 F.2d 611 (2d Cir. 1991) ................................................................................. 17

*In re Jazz Photo Corp.*,
  312 B.R. 524 (Bankr. D.N.J. 2004) ...................................................................... 13

*Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*,
  No. 12-cv-642, 2014 WL 7338849 (E.D.N.Y. Dec. 22, 2014) ............................... 9

*Johnson v. Wolan*,
No. 10-cv-1622, 2010 WL 5076821
(S.D.N.Y. Dec. 13, 2010) .................................................................................... 12

*Kara Holding Corp. v. Getty Petroleum Marketing, Inc.*,
99-cv-0275, 2004 WL 1811427
(S.D.N.Y. Aug. 12, 2004) ...................................................................................... 7

*King v. Wang*,
No. 14-cv-7694 (S.D.N.Y. Oct. 31, 2018) ........................................................... 17

*Lancaster v. Zufle*,
170 F.R.D. 7 (S.D.N.Y.1996) ................................................................................. 7

*Levi & Korsinsky, LLP v. Bower*,
No. 14-cv-10069, 2015 WL 10437758
(S.D.N.Y. Feb. 16, 2015) ....................................................................................... 6

*Lipin v. Nat'l Union Fire Ins. Co.*,
202 F.Supp.2d 126 (S.D.N.Y. 2002) ............................................................... 17, 18

Nisenbaum v. Milwaukee Cnty.,
333 F.3d 804 (7th Cir.2003) ................................................................................. 10

*Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*,
No. 15-cv-2142 (7th Cir. Mar. 10, 2017) ............................................................. 10

*Penn, LLC v. Prosper Business Dev. Corp.*,
773 F.3d 764 (6th Cir. 2014) ............................................................................... 10

*Ridder v. City of Springfield*,
109 F.3d 288 (6th Cir. 1997) .................................................................................. 7

*Robinson v. Alutiq-Mele, LLC*,
643 F.Supp.2d 1342 (S.D. Fla. 2009) ................................................................... 14

*Sara v. Saint Joseph Health System, Inc.*,
No. 11-cv-230 (E.D. Ky. Nov. 18, 2011) ............................................................. 12

*Saud v. Bank of New York*,
929 F.2d 916 (2d Cir.1991) .................................................................................. 18

*SortiumUSA, LLC v. Hunger*,
No. 11-cv-1656, 2014 WL 1080765
(N.D. Tex. Mar. 18, 2014) .................................................................................... 14

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
682 F.3d 170 (2d Cir. 2012) ................................................................................. 10

*Sweetwater Estates, Ltd. v. Carpenter*,
   No. 16-cv-1578 (E.D.N.Y. Mar. 6, 2018) .................................................................... 10

*Watkins v. Smith*,
   No. 12-cv-4635, 2013 WL 655085
   (S.D.N.Y. Feb. 22, 2013) ............................................................................................. 18

*Wi-LAN Inc. v. LG Electronics, Inc.*,
   No. 10-cv-0432 (S.D.N.Y. May 10, 2013) .................................................................. 13

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................................... 23

*Williamson v. Recovery Ltd. P'ship*,
   542 F.3d 43 (2d Cir. 2008) ............................................................................................. 7

### Other Authorities

66 Fed. Reg. 6138, HAACP; Procedures for the Safe and Sanitary Processing and Importing of
   Juice (Jan. 19, 2001) (21 C.F.R. Part 120) ................................................................. 20

D. A. Kysar,
   *Preferences for processes: The process/product distinction and the regulation of consumer
   choice*, Harv. L. Rev. 118 (2004): 526 ........................................................................ 23

H.R. Rep. No. 107-424,
   Conference Report and Joint Explanatory Statement to H.R. 2646 (2002) ............................. 20

NACMCF, Requisite Scientific Parameters for Establishing the Equivalence of Alternative
   Methods of Pasteurization, (Aug. 27, 2004) ............................................................... 22

Public Law 107-171,
   Farm Security and Rural Investment Act of 2002 (FSRIA), H.R. 2646, Sec. 10808
   (Pasteurization)............................................................................................................. 20

### Rules

Fed. R. Civ. P. 11(b) ............................................................................................................. 6

Fed. R. Civ. P. 11(c)(2) .................................................................................................. passim

Rule 11(b)(1)......................................................................................................................... 17

## INTRODUCTION

Plaintiff submits this memorandum of law in opposition to defendant's notice of motion for sanctions, memorandum of law in support and declarations and accompanying exhibits.  ECF 50-53.  For the reasons below, the motion should be denied it in its entirety.

## I.   REQUIREMENTS FOR SANCTIONS UNDER RULE 11

Rule 11 has procedural and substantive requirements that must be met for a Court to award sanctions.  Fed. R. Civ. P. 11(b)-(c).

Procedurally, a motion for sanctions is (1) made separately from any other motion, (2) describes the specific conduct that allegedly violates Rule 11(b), (3) served under Rule 5, (4) not filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected, (5) within 21 days after service.  Fed. R. Civ. P. 11(c)(2).

Substantively, sanctions may be warranted where there is an improper purpose, no support for a legal contention or a nonfrivolous argument for a modification of existing law and the absence of any evidentiary support for the claims. Fed. R. Civ. P. 11(b).

## II.  SANCTIONS SHOULD BE DENIED DUE TO PROCEDURAL AND SUBSTANTIVE ISSUES

Rule 11's procedural requirements "have been strictly interpreted by the Second Circuit," and even held to be mandatory, owing to the harsh and penal nature of the Rule.  *Levi & Korsinsky, LLP v. Bower*, No. 14-cv-10069, 2015 WL 10437758, at *3 (S.D.N.Y. Feb. 16, 2015);

A fundamental purpose of strict compliance with the procedural requirements of Rule 11 is that the moving party "places its adversary on notice that the matter may not be viewed as simply part of the paper skirmishing among adversaries that too often characterizes litigation in this

uncivil age."  *Gal v. Viacom Int'l, Inc.,* 403 F.Supp.2d 294, 309 (S.D.N.Y. 2005) quoting *Lancaster v. Zufle*, 170 F.R.D. 7 (S.D.N.Y.1996).

Since almost all the Rule 11 procedural requirements have not been satisfied, the motion for sanctions should be denied.  *Carruthers v. Flaum*, 450 F.Supp.2d 288, 304 (S.D.N.Y. 2006) ("Sanctions may not imposed if the party seeking them failed to comply with the technical requirements of Rule 11"); *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming district court's decision to deny sanctions where the defendants "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule").

A.   <u>Non-Compliance with the "Safe Harbor" Requires Denial of Motion</u>

Rule 11's safe harbor provision requires that a party intending to move for sanctions serve a copy of the actual motion to be filed, at least 21 days in advance.  Fed. R. Civ. P. 11(c)(2)

("if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"); *Kara Holding Corp. v. Getty Petroleum Marketing, Inc.*, 99-cv-0275, 2004 WL 1811427, at *3 (S.D.N.Y. Aug. 12, 2004) (denying motion for sanctions where it was filed "before the 21-day safe harbor notice had been provided to defendants" citing *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) ("Rule 11 cases emerging in the wake of the 1993 amendments have found the `safe harbor' provision to be an absolute requirement.").

Defendant's warning letter, sent by email and first-class mail, dated March 15, 2017, informed plaintiff that it had until "no later than close of business, March 17, 2017" to comply with defendant's threats.  ECF 11-2, DECLARATION OF J. NOAH HAGEY, ESQ. IN SUPPORT

OF MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11, Exhibit 9 (copy of March 15, 2017 letter sent from J. Noah Hagey to Plaintiff's counsel).

When plaintiff did not comply, defendant filed its  motion for sanctions on March 30, 2017, a week before the April 6, 2017 expiration of the safe harbor period.  Though ECF document number 11 shows "Declaration re Memorandum in Support of Motion to dismiss," the annexed exhibits are curiously lacking any description.

| 11 | *Filed & Entered:* | 03/30/2017 | Declaration |
|----|---------|------------|-------------|
|    | *Docket Text:* DECLARATION re [10] Memorandum in Support *of Motion to Dismiss by J. Noah Hagey* by Drink Daily Greens LLC (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4) (Hagey, Jonas) |||

Only after the files are downloaded is it clear that defendant <u>filed</u> its motion for sanctions.

<u>Document 11</u>

7

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Rule 11 Motion that Daily Greens served on Plaintiff concurrently with the Motion to Dismiss.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Noah Hagey in support of the Rule 11 Motion that Daily Greens served on Plaintiff concurrently with the Motion to Dismiss.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Shauna Martin in support of the Rule 11 Motion that Daily Greens served on Plaintiff concurrently with the Motion to Dismiss.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of Daily Greens' product label for their "Harmony Sweet Greens" Cold-Pressed Vegetable and Fruit Juice Blend.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 30, 2017

_____
J. Noah Hagey

The first, second and third exhibits include the sanctions motion and two declarations. Defendant did not comply with the safe harbor requirement of waiting 21 days, and its motion for sanctions should be denied.  *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.,* No. 12-cv-642, 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014) ("[a]ny motion seeking Rule 11 sanctions that does not comply with [the safe harbor] provisions must be denied.").

      B.      <u>Warning Letter Prior to Filing the Sanctions Motion did not Trigger Safe Harbor</u>

Beyond the non-compliance with the safe harbor, defendant did not start the clock as to the time when plaintiff could have taken corrective action.  This is because its March 15, 2017 correspondence was a warning letter, instead of the motion filed less than two weeks later.  *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir.

2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."); *Black v. Covidien*, No. 17-cv-6085 (W.D.N.Y. July 2, 2018) ("informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period"; *Sweetwater Estates, Ltd. v. Carpenter*, No. 16-cv-1578 (E.D.N.Y. Mar. 6, 2018) ("Rule 11's safe harbor provision requires that a party intending to move for sanctions serve a copy of the actual motion to be filed, and not merely a letter warning of the party's intent to seek sanctions."); *see also Castro v. Mitchell*, 727 F.Supp.2d 302, 307-08 (S.D.N.Y. 2010) ("Courts have held that even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11."); *Gal*, 403 F.Supp.2d at 309 ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters.").

All but one circuit which have addressed the issue determined that "substantial compliance" of a party – substituting harsh letters or the like in lieu of a formal motion, is incompatible "with the explicit requirements of the Rule and the clear explanation from the Advisory Committee." *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, No. 15-cv-2142 (7th Cir. Mar. 10, 2017) (noting that "*Nisenbaum* stands alone and is difficult to reconcile with the explicit requirements of the Rule and the clear explanation from the Advisory Committee"); *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir.2003) (substantial compliance with warning-shot requirement was sufficient to allow sanctions) compared with *Penn, LLC v. Prosper Business Dev. Corp.*, 773 F.3d 764, 768 (6th Cir. 2014) (reviewing circuit split: Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have rejected "substantial compliance," and only Seventh Circuit has adopted it).

In this circumstance, it is not necessary to establish that plaintiff had not agreed to email service of the warning letter, the letter did not arrive via first-class mail until after the threatened compliance date (March 17, 2017) and no affidavit of service has yet been presented.

### C.   Rule 11 Motion was not Filed Separately

Defendant filed its motions under Rule 11 and Rule 12 together, necessitating denial of the sought relief. Fed. R. Civ. P. 11(c)(2) ("[a] motion for sanctions must be made separately from any other motion[.]");  *see* ECF 10-11, below.

| ECF No. | Document Title |
|---|---|
| 10 | DEFENDANT DRINK DAILY GREENS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT, PURSUANT TO FEDERAL LAW OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) |
| 11 | DECLARATION OF J. NOAH HAGEY, ESQ. IN SUPPORT OF MOTION TO DISMISS COMPLAINT, PURSUANT TO FEDERAL LAW OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) |
| 11-1 | MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11 |
| 11-2 | DECLARATION OF J. NOAH HAGEY, ESQ. IN SUPPORT OF MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11 |
| 11-3 | DECLARATION OF SHAUNA MARTIN IN SUPPORT OF MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11 |

As indicated in the above chart of ECF filings, defendant <u>filed</u> its Rule 11 motion at the <u>same time</u> its Rule 12 motion was filed, requiring denial of the relief sought here.  *Avent v. Solfaro*, 223 F.R.D. 184, 187 (S.D.N.Y. 2004) (denying motion for sanctions where party "filed his Rule 11 motion in conjunction with a motion pursuant to 28 U.S.C. § 1927");  *Johnson v. Wolan*, No.

10

10-cv-1622, 2010 WL 5076821, at *5 (S.D.N.Y. Dec. 13, 2010) (denial where motion for sanctions made along with a motion to dismiss); *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999) ("Permitting a motion for sanctions to be made in conjunction with another motion constitutes an abuse of discretion."); *Sara v. Saint Joseph Health System, Inc.*, No. 11-cv-230 (E.D. Ky. Nov. 18, 2011) (denying Rule 11 motion where plaintiff failed to "comply with the safe harbor provision, filing his motion for sanctions simultaneous with his service on the defendants").

      D.    <u>Defendant's Claim that it Only Served the March 30, 2017 Sanctions Motion is Inadequate to Show Compliance with Rule 11</u>

Though defendant filed its sanctions motion prematurely, it claimed the "filing" was only "service." ECF 19, *Response to Plaintiff's Letter Motion on April 25, 2017* (claiming it "put Plaintiff on written notice of the false allegations on March 15, 2017. When Plaintiff did not respond, Daily Greens served the Rule 11 Motion on March 30, 2017.").

In a telephone conference of April 16, 2017, defendant's counsel attempted a justification of its Rule 11 motion:

> In our Rule 12 Motion, we couldn't file the Rule 11 Motion simultaneously because we have the statutory Safe Harbor requirement. We did put a footnote into the brief and we did attach the Rule 11 papers so the Court would be aware of it.

Transcript, Page 5, Lines 11-15.

Even accepting defendant's hyper-technical explanation of "filing" as true – it admittedly "attach[ed] the Rule 11 papers so the Court would be aware of it," which is still in contravention of the second prong of Fed. R. Civ. P. 11(c)(2)

, that it "must not be filed or be presented to the court" prior to the expiration of the safe harbor.

11

This Court pointed this out to defendant, stating, "You shouldn't have made your Rule 11 motion to begin with, it was premature."  April 16, 2017, page 6, Lines 5-6, 12-14 (describing defendant's Rule 11 motion as "very premature, if not inappropriate").

Defendant is attempting to "have its cake and eat it too" through filing the sanctions motion, yet disclaiming that it was actually filed instead of "attached" or "served," to bring it within the strictures of Rule 11.  *In re Jazz Photo Corp.*, 312 B.R. 524, 532 (Bankr. D.N.J. 2004) (concluding that the equivalent Bankruptcy Rule, 9011(c)(1)(A), requires a sanctions motion "be made "separately from other motions or requests") quoting *Divane*, 200 F.3d at 1025; *Wi-LAN Inc. v. LG Electronics, Inc.*, No. 10-cv-0432 (S.D.N.Y. May 10, 2013) (citing Rule 11(c)(2) and noting that "LG's failure to comply with Rule procedural requirements bars any award of Rule 11 sanctions.").

E.   The Sanctions Motion Defendant Purportedly Served on March 30, 2017 is a Different Motion than the November 2, 2017 Motion

Defendant's filed sanctions motion of March 30, 2017 was not the same motion it filed on November 2, 2018, though they appear identical at a glance.  Compare ECF 11-1, *Motion to Sanction Plaintiff and his Lawyers Pursuant to FRCP Rule 11* ("This case *is* a paradigmatic lawyer-driven putative "class action" filed by a captive plaintiff to extort money") with ECF 51, *Memorandum of Law in Support of Motion to Sanction Plaintiff and his Lawyers Pursuant to FRCP Rule 11* ("This case *was* a putative 'class action' filed by a captive plaintiff to extort money from an honest business that makes good products") (emphasis added to show that the motions filed were not identical).

That they are different motions is clear from defendant's heading in the new sanctions motion, because when defendant filed the first sanctions motion, there had not been a first or second amended complaint.  ECF 51 at 11.

## I.   PLAINTIFF AND HIS LAWYERS VIOLATED RULE 11 BECAUSE THE COMPLAINT, FAC, AND SAC CONTAIN KNOWINGLY FALSE ALLEGATIONS OF FACT

Rule 11 requires the moving party to serve and file the *same motion*.  Fed. R. Civ. P. 11(c)(2)("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected").

The Rule refers to the singular "motion" such that the motion that is served under Rule 5 will be the identical motion filed or presented to the Court in the event the opposing party does not avail themselves of the safe harbor.  *Robinson v. Alutiq-Mele, LLC*, 643 F.Supp.2d 1342 (S.D. Fla. 2009)  ("By its plain language, Rule 11 requires a movant to file and serve *the same* sanctions  motion.") (emphasis in original).

The reason why the same motion must be filed as the version served is because sanctions are not a moving target.  They are not a shotgun, aimed at whatever is in their way, but a narrowly tailored precision tool, which focus on *specific allegations* or a *specific pleading*.   Here, defendant's sanction motion overextends by grabbing the other pleadings, and it cannot show any indicia of compliance with Rule 11's procedures for them.

Defendant's failure to re-file the *same* motion it served (or as plaintiff claims, filed) on March 30, 2017, requires the present motion for sanctions be denied.  *SortiumUSA, LLC v. Hunger*, No. 11-cv-1656, 2014 WL 1080765, at *3 (N.D. Tex. Mar. 18, 2014) (holding that a defendant's

13

"failure to serve [a plaintiff] during the safe-harbor period with the same motion for sanctions that it later filed with the Court indicates that it has not strictly complied with Fed. R. Civ. P. 11(c)(2) .").

Defendant's sprawling Rule 11 motion minimizes the seriousness and severity of the sanctions remedy and its deterrent effect, especially where the content and purpose of the motions are better described as Rule 12 motions.

F.   Defendant's Non-Compliance with Court Rules Stymied Plaintiff's Efforts to Take Corrective Action

Rule 11 requires that the challenged claims be "withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(2);  see *Carruthers*, 450 F.Supp.2d at 307 (*"*The text of Rule 11 does not specify what constitutes the "withdrawal" of a challenged claim. However, the Rules Committee Notes to the 1993 revision make plain that withdrawal need not be a formal affair").

In its attempts to withdraw or appropriately correct certain challenged claims, defendant's hostility stymied plaintiff's ability to act in a way that complied with the Individual Rules.  On April 3, 2017, plaintiff informed the Court that despite the requirement the parties agree upon a briefing schedule prior to filing motions, defendant's motions of March 30, 2017 were made without any attempt to arrange such a schedule.  ECF 13, *Letter, Briefing Schedule by Gerard Campbell*.

Moreover, plaintiff's time to withdraw the challenged claims did not begin to run until there was clarity as to when plaintiff would have to amend its complaint as of right.  Since defendant filed its Rule 12 motion on March 30, 2017, it would have appeared that plaintiff would have 21 days from that date to withdraw or appropriately correct the challenged claims.

14

However, had plaintiff accepted the March 30, 2017 as the start date and amended the complaint within 21 days, it would have legitimized non-compliance with the Court's individual rules for the duration of the litigation.

What followed in the weeks after March 30, 2017, was regrettable hostility at every attempt of plaintiff to establish a briefing schedule for defendant's Rule 11 and Rule 12 motions. This would have clarified when plaintiff's time to act under Rule 11, Rule 12 and Rule 15(a)(1)(B) would begin. Defendant's filing without abiding by the Individual Rules are an example of why Individual and Local Rules are important – they provide clarity and consistency, and prevent improvident filings which result in ambiguity as to important dates.

Essentially, defendant demanded the challenged claims be corrected, yet when plaintiff attempted to establish an orderly and agreed upon schedule to act upon the challenged claims, defendant's intransigence was an obstacle. *Carruthers*, 450 F.Supp.2d at 307 ("What little case law exists in this Circuit holds that if a party indicates an intention to withdraw a contested claim during the safe harbor period, that suffices…So as long as the plaintiff takes some step leading to the withdrawal of the offending claim—whether offering to withdraw the claim or moving for leave to withdraw them—Rule 11 will be satisfied"). Therefore, defendant should not be able to claim that plaintiff failed to take appropriate corrective action within 21 days of the improper and premature filing of its sanctions motion.

**III.   FACTUAL SUPPORT EXISTED FOR PLAINTIFF'S CLAIMS DESPITE DISMISSAL WITH PREJUDICE**

Should the Court not find the procedural points sufficient to deny defendant's sanctions motion, the substantive or merit-based arguments are more than adequate to support denial.

Fed. R. Civ. P. 11(b)(1) (presenting a pleading for an improper purpose) overlaps with the other subsections of Rule 11(b) – Fed. R. Civ. P. 11(b)(2)-(4).  This is because if it is or could be learned that a paper and its allegations are without support in law or fact, it inevitably follows such a paper would be considered to be presented or maintained for an improper purpose. *King v. Wang*, No. 14-cv-7694 (S.D.N.Y. Oct. 31, 2018) ("The Second Circuit has instructed that a court "is to impose sanctions against a party and/or his attorney under Rule 11 when it appears that a pleading or other signed paper has been interposed for an improper purpose or that after reasonable inquiry, a competent attorney could not form a reasonable belief that the signed paper was well grounded in fact" quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 622 (2d Cir. 1991).

The Court's decision to dismiss the case with prejudice does not mean defendant's motion for sanctions should be granted, because there are different standards for succeeding on different types of motions.

A.   <u>Defendant Cannot Show the Representations Were Made for an Improper Purpose</u>

Defendant has characterized plaintiff's "improper purpose" as to "extort money," leaving "their claims publicly pending against" it for almost two years, forcing defendant to incur costs and "insist[ing] on wasting the Court's time when they knew their allegations were false."  ECF 51, 2.

Though defendant offers no citation to Fed. R. Civ. P. 11(b)(1), it relies on cases within this Circuit where courts have held the filing of certain pleadings "were asserted for an improper purpose—to harass and cause unnecessary delay or increase the cost of litigation."  *Lipin v. Nat'l Union Fire Ins. Co.*, 202 F.Supp.2d 126, 140-41 (S.D.N.Y. 2002) (sanctions warranted where "claim preclusion clearly foreclosed further litigation.").

The Court in *Lipin* determined sanctions were warranted because that plaintiff had filed

16

four cases against roughly the same parties – her prior employer and their employees.   202 F.Supp.2d at 131 ("Lipin IV, the matter now before the Court, is another attempt to assert the claims raised and dismissed in Lipin I, Lipin II, and Lipin III… reiterating the allegations of sexual harassment and discrimination in connection with her employment by the National Red Cross").

In another case defendant cites, the Court awarded sanctions because the plaintiff "frivolously sued a number of defendants who had no connection to the underlying factual events that gave rise to the plaintiff's suit."  *Watkins v. Smith*, No. 12-cv-4635, 2013 WL 655085, at *19 (S.D.N.Y. Feb. 22, 2013).  Defendant does not and cannot allege plaintiff sued an incorrect party, but rather that the claims against it were deficient.

B.   No Res Judicata Effect of *Alamilla*

Defendant has advanced a broad interpretation of res judicata based on *Alamilla v. Hain Celestial Group, Inc.*, 30 F.Supp.3d 943 (N.D. Cal. 2014).  However, claim preclusion can only exist where the initial or prior action was between "*the parties or their privies*."  *Lipin*, 202 F.Supp.2d at 135 quoting *Saud v. Bank of New York*, 929 F.2d 916, 918-19 (2d Cir.1991) (emphasis added).  Defendant has not alleged it is in privity with Hain Celestial Group, Inc., which makes its argument unsupportable and puzzling.

According to defendant, sanctions are warranted because plaintiff here "omitted these [scientific articles from *Alamilla*] citations, failed to advise the Court of the prior dismissed case, and cited no evidence at all."  ECF 51 at 2.

This allegation is without merit because to require that any plaintiff include case law in a complaint where a court made a contrary decision in another case would result in pleadings that are not short, plain statements of the facts and violate other Federal Rules.   Further, such

17

requirement presupposes that district judges are incapable of reaching their own conclusions based on specific facts and allegations.

According to defendant, "the Honorable Vincent Chabria in the Northern District of California dismissed the case without leave to amend because those articles showed that HPP has no negative material effect on the juice."  Defendant's Memorandum of Law, p. 14.

That court did not make the determination defendant represents, that two articles "proved 'that pressurization has 'little or no effects on nutritional and sensory quality aspects of foods.'" Defendant's Memorandum of Law, p.8.  Neither was there a conclusion that "showed that HPP has no negative material effect on the juice."  Defendant's Memorandum of Law, p.8.

Rather, the court found that the allegations pleaded by plaintiff were contradictory. *Alamilla*, 30 F.Supp.3d 943 at 944 ("Courts need not accept as true allegations contradicting documents that are referenced in the complaint.).

Despite defendant's attempt at distortion, there is no requirement that allegations be all or nothing, such that plaintiff must allege high pressure treatment "cooks" juice.

  C.   Evidentiary Support and Existing Law Existed to Support Plaintiff's Claims

According to defendant, plaintiff's allegations that the Products are not "not pasteurized" are "knowingly false."  ECF 51 at 6.  The reasons, according to defendant, was because high pressure treatment is "an alternative to pasteurization."

However, plaintiff presented and possessed credible evidentiary support for its position that the FDA has not defined pasteurization for the purposes of juice processing.  Fed. R. Civ. P. 11(b)(2)

("the claims, defenses, and other legal contentions are warranted by existing law").

This support included the FDA's rulemaking, where it stated it "has not defined what

18

pasteurization means in terms of juice and juice products because of the unique characteristics of the many various types of juice and juice products."  66 Fed. Reg. 13, 6138 at 6145, HAACP; Procedures for the Safe and Sanitary Processing and Importing of Juice (Jan. 19, 2001) (21 C.F.R. Part 120).

Following that FDA rulemaking, Congress expanded the definition of pasteurization in the Farm Security and Rural Investment Act of 2002 ("2002 Farm Bill").  Public Law 107-171 (2002), H.R. 2646, Sec. 10808.

The Conference Report and the Joint Explanatory Statement of the Committee of Conference reflects these changes "to facilitate the use of effective food safety technologies," stating:

> the term "pasteurization or "pasteurized" may be uniformly used to advise consumers that a treatment or process, including a series of treatments or controls, may be used if it achieves the same food safety effect as currently recognized pasteurization methods. The intent of this provision is to make explicit that the term "pasteurization" is available to describe a food safety effect, regardless of the technology or process employed to achieve that result.

H.R. Rep. No. 107-424 at 403, 680-81, Conference Report and Joint Explanatory Statement of the Committee of Conference to Accompany H.R. 2646 (2002) ("technologies other than thermal treatment may achieve a food safety effect equivalent to pasteurization.").

That the executive and legislative branches endorsed such a modification to the definition of pasteurization shows the allegations were "warranted by existing law" and were "evidentiary support" for plaintiff's position.  Fed. R. Civ. P. 11(b)(3); Fed. R. Civ. P. 11(b)(4)

.

D.    Plaintiff did not Allege the Products are Subjected to Thermal Treatment

As to defendant's argument that sanctions should be awarded because of the "false allegation" that the Products are heated, defendant's own motion concedes that was factually accurate: "the juice never reaches a temperature above 19-20° C" after the juice begins in "water chilled to 4-5" degrees Celsius.  ECF 51 at 4.

Plaintiff never alleged the increase in temperature caused the juice to be pasteurized through the application of heat.  Instead, plaintiff claimed that (1) consumers are familiar with the term pasteurization as relating to the application of heat, (2) consumers are not aware of novel food treatment methods that do not involve the application of heat, so that (3) the representations that the products are "not heated" was misleading (4) because they are unfamiliar with high pressure processing.  ECF 1, ¶¶ 36-37.

E.    Allegations Distinguished Pasteurization When Referring to a Food Safety Effect from the Commonly Understood Heat Pasteurization

Defendant misrepresents the pleadings, by claiming plaintiff alleged that high pressure processing is "heat pasteurization."  ECF 51, ("HPP by definition is not "heat pasteurization"").

The complaint defined "pasteurization" as a term used to describe "a processing method that is reasonably certain to achieve destruction or elimination of the most resistant microorganisms of public health significance within the juice product."  ECF 1, 32.

This definition was based on what the National Advisory Committee on Microbiological Criteria for Foods (NACMCF) agreed upon, when Congress and the Executive broadened "the definition of pasteurization":

> Any process, treatment, or combination thereof, that is applied to food to reduce the most resistant microorganism(s) of public health significance to a level that is not likely to present a public health risk under normal conditions of distribution and storage.

20

Requisite Scientific Parameters for Establishing the Equivalence of Alternative Methods of Pasteurization, (Aug. 27, 2004).

Plaintiff never claimed the Products were pasteurized through a thermal treatment, but that they underwent a process which was the equivalent of traditional heat pasteurization in its ability to achieve a reduction in microorganism activity (5-log reduction).

Moreover, the complaint discussed how consumers are familiar with the application of heat as the primary understood method to inactivate microorganisms, and that defendant's claims – the juice was not heated and not pasteurized – were misleading because other terms (hpp) were not clarified.

This Court strongly disagreed with plaintiff and dismissed the action with prejudice, concluding that, despite the absence of a binding regulation, representing a product treated with non-thermal treatments as not pasteurized is <u>not misleading</u>, given other information that clarified what is used in place of heat (high pressure processing). ECF 46 (emphasis added).

This Court correctly noted that another Court in this district ruled that juice labels were not misleading where there was "requisite additional information." ECF 48 citing *Campbell v. Freshbev LLC*, No. 16-cv-7119, 2018 WL 3235768, at *4 (E.D.N.Y. July 3, 2018).

The Court's decision does not mean plaintiff's theory - the disclaimer on the back of the label of "high pressure processed" was not sufficient to clarify the front-label claims – was frivolous. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) ("*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception.") (emphasis in original) citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th

21

Cir. 2008) ("reasonable consumers expect that the ingredient list contains *more detailed information about the product that confirms other representations* on the packaging").

    F.   <u>Plaintiff's Allegations for an Extension or Modification of Existing Law were Nonfrivolous</u>

Though this Court and the *Campbell* Court decided that no reasonable consumer would be misled as to whether the Products were heat pasteurized given statements such as "high pressure processed," the existence of FDA guidance and Congress' subsequent amendment of existing law are evidentiary support for plaintiff's claims.  Rule 11(b)(3).

Even if everything defendant has alleged is true – high pressure processing destroys *only* the "bad" microorganisms while leaving all the "good" microorganisms, plaintiff's argument would still be nonfrivolous – to extend the relevant labeling regulations to incorporate updated definitions of certain terms and require that consumers are fully informed of production processes used in making the products they buy.  Rule 11(b)(2)

; see D. A. Kysar, *Preferences for processes: The process/product distinction and the regulation of consumer choice*, Harv. L. Rev. 118 (2004): 526.

Across the spectrum of consumer goods, companies are eager to emphasize aspects of the production process valued by consumers – whether it's "fair trade coffee," "humanely raised meat," or "natively grown squash," these representations are made solely because they convey information that is valued.  The (un)fair trade coffee and the "(non-)natively grown squash" may taste the same as their fair and native counterparts, but it is not frivolous to want those products to be labeled forthrightly so the consumer knows what they are getting and how it got there.

The FDA, except for radiation, does not regulate production processes of food, as it is primarily concerned with ensuring the integrity and safety of the food supply.  Therefore,

plaintiff's arguments – that consumers be apprised of certain production processes in unambiguous and clear terms – is a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" instead of frivolous.  Rule 11(b)(2).

**CONCLUSION**

Plaintiff has put forth numerous procedural reasons why defendant's motion for sanctions should be denied.  The purpose of a sanctions award is not to punish, as defendant claims, but to deter.  Plaintiff and counsel do not need to be "deterred" because the undersigned based all allegations on existing law and evidentiary support.  Sanctions are not intended to award or compensate the party which prevails in litigation, which is what defendant has sought here. Finally, the hours defendant claims it expended are grossly inflated, as almost all its pleadings were duplicative, and it did so by utilizing the same "copy-and-paste" word processor techniques it has faulted plaintiff for.

For the foregoing reasons plaintiff respectfully requests the Court deny defendant's motion for sanctions, along with such other and further relief the Court deems just and proper.

Dated:   November 23, 2018

Respectfully submitted,

Levin-Epstein & Associates, P.C.
/s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

1:16-cv-07176-ILG-PK
United States District Court
Eastern District of New York

Gerard Campbell, individually and on behalf of all others similarly situated,

                 Plaintiff,

    - against -

Drink Daily Greens LLC

                 Defendant

---

### Plaintiff's Opposition to Defendant's Motion for Sanctions

---

Levin-Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 23, 2018

                      /s/ Joshua Levin-Epstein
                     Joshua Levin-Epstein