UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARD CAMPBELL, individually on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>DRINK Daily Greens, LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No. 1:16-cv-07176-ILG-PK<br><br>**REPLY IN SUPPORT OF MOTION TO SANCTION PLAINTIFF AND HIS LAWYERS PURSUANT TO FRCP RULE 11** |

J. Noah Hagey, Esq.
Matthew Borden, Esq. (*pro hac vice*)
Amit Rana, Esq. (*pro hac vice*)
BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel./Fax: (646) 829-9403
hagey@braunhagey.com
borden@braunhagey.com
rana@braunhagey.com

*Attorneys for Defendant Drink Daily Greens, LLC*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

I.  PLAINTIFF FAILS TO REFUTE DAILY GREENS' SHOWING THAT THEIR FILINGS VIOLATED RULE 11................................................................................... 3

    A.  Plaintiff's Effort to Muddle the Rule 11 Standard Is Not a Basis for Avoiding Sanctions................................................................................... 4

    B.  Plaintiff's Allegations that Daily Greens' Products Were "Heated" and "Pasteurized" Violated Rule 11 ......................................................... 4

    C.  Plaintiff's Allegations that HPP Materially Affects Daily Greens' Juices Violated Rule 11 ............................................................................ 6

    D.  Plaintiff's Allegations that He Thought Daily Greens' Products Were Not Subject to HPP Violate Rule 11................................................... 7

    E.  Plaintiff Was Not Seeking an "Extension or Modification of Existing Law"..................................................................................................... 8

II.  DAILY GREENS' MOTION IS PROCEDURALLY PROPER ........................................ 9

    A.  Daily Greens Filed the Motion More than 19 Months after Serving it................... 9

    B.  Daily Greens Served but Did Not File the Motion on March 30, 2017................. 10

    C.  Daily Greens' March 15, 2017 Warning Letter Had Nothing to Do with the Rule 11 Safe Harbor................................................................................... 11

    D.  The Filed Motion Was Substantially the Same as the Served Motion for Purposes of the Safe Harbor ................................................................ 11

    E.  Plaintiff Cannot Blame Daily Greens for their Own Refusal to Withdraw or Correct Their False Allegations................................................ 13

CONCLUSION.................................................................................................................... 14

## **TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*Abreu v. Alutiiq-Mele, LLC*,
  2012 WL 4369734 (S.D. Fla. Aug. 3, 2012) ............................................................................ 12

*Alamilla v. Hain Celestial Group, Inc.*,
  30 F. Supp. 3d 943 (N.D. Cal. 2014) ................................................................................... 2, 6

*Colliton v. Cravath, Swaine & Moore LLP*,
  2008 WL 4386764 & n.11 (S.D.N.Y. Sept. 24, 2008) .............................................................. 9

*Huettig & Schnormm, Inc. v. Landscape Contractors Council of Northern Calif.*,
  790 F.2d 1421 (9th Cir. 1986) ................................................................................................. 9

*In re Jazz Photo Corp.*,
  312 B.R. 524 (Bankr. D.N.J. 2004) ....................................................................................... 11

*Lipin v. Nat'l Union Fire Ins. Co.*,
  202 F. Supp.2d 126 (S.D.N.Y. 2002) ....................................................................................... 7

*Prim v. Peatco Ltd. L.P.*,
  No. 90-cv-7272, 1994 WL 570754 (S.D.N.Y.) ....................................................................... 7

*Robinson v. Alutiq-Mele, LLC*,
  643 F.Supp.2d 1342 (S.D. Fla. 2009) .................................................................................... 12

*SortiumUSA, LLC v. Hunger*,
  2014 WL 1080765 (N.D. Tex. Mar. 18, 2014), the court denied ............................................ 13

*U.S. ex rel Tomlin v. Royco, Inc.*,
  No. 3-02-1179, 2010 WL 1727888 (M.D. Tenn. Mar. 30, 2010) ..................................... 3, 12

**RULES**

Fed. R. Civ. P. 11 ............................................................................................................... passim

Daily Greens respectfully submits this Reply in support of its Rule 11 Motion.

**INTRODUCTION**

Daily Greens is a small business in Texas that has needlessly suffered under the weight of this senseless public lawsuit, and as a result has had to lay off employees and has struggled to pay its legal fees. Plaintiff's Opposition fails to explain why he put knowingly false allegations in the complaint and refused to withdraw them even after Daily Greens provided him evidence that his claims were false. Plaintiff does not dispute that Daily Greens gave him many opportunities to stop wasting judicial and party resources. But instead of doing the right thing, Plaintiff doubled down. He filed a series of increasingly nonsensical pleadings that culminated in him trying to defend his claims by urging the Court to rely on images he misleadingly doctored. Plaintiff's Opposition is a microcosm of how he treated this case – it ignores the facts and arguments in the moving papers and makes little substantive effort to justify the false and baseless allegations in the pleading. Instead, it offers separately sanctionable theories and makes arguments that have nothing to do with the pending motion, which only further evidence that this case was frivolous. Plaintiff should now be required to pay all Daily Greens' legal fees for his willful Rule 11 violations.

Plaintiff fails to address any of the evidence cited in the moving papers showing that the allegations in his complaints were false, and that he and his lawyers were aware of the falsity:

*First*, the Complaint alleged that Daily Greens' juices were "heated" and "pasteurized," which Plaintiff knew was not true. As explained in the moving papers and undisputed by Plaintiff, Plaintiff made no effort to investigate before making these false claims. He also does not dispute that on March 15, 2017, Daily Greens wrote him a letter explaining its production process and how everything was kept refrigerated at temperatures far below those in the fields

where the greens in the juices were grown. He undisputedly refused to excise those false claims in two subsequent amendments to the complaint. Making these false allegations without evidence and failing to withdraw these false allegations violated Rule 11.

*Second*, Plaintiff does not dispute that he alleged that HPP materially and negatively impacted Daily Greens' juices. Nor does he dispute that when his lawyers made the same claim in another federal court, that court dismissed the claims on the ground that scientific articles his lawyers attached showed just the opposite. *Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014). Nor does he deny that he then refiled virtually identical claims here, except that he omitted the references to the scientific articles. He made such allegations without any evidentiary support, and with actual knowledge of the scientific evidence proving otherwise. Plaintiff offers no explanation for this in his Opposition, and provides no evidentiary support for his claims about the effects of HPP. Making knowingly false statements about the effects of HPP violated Rule 11.

*Third*, Plaintiff does not dispute that he alleged that he thought that Daily Greens' juice was not subject to HPP. Nor does he dispute that Daily Greens states that its juices are "**High Pressure Processed**" in large, boldface type on the labels and explains how HPP works in great detail on multiple pages of its website, both of which Plaintiff claimed that he read and relied on before he purchased the product. (Mot. at 9-10; Declaration of J. Noah Hagey ("Hagey Decl."), Exs. 5-8.) He does not dispute that he tried to avoid dismissal of this claim by including what the Court found to be misleadingly cropped images of Daily Greens' labels to make it look like the labels failed to disclose that Daily Greens uses HPP on its products. (Mot. at 1-2 (citing Sept. 4, 2018 Order, Dkt. No. 46, at 3).) The Opposition provides no explanation for this

sequence of misconduct.  Making knowing misrepresentations about reliance and then compounding them with additional falsehoods to the Court violated Rule 11.

Because he has no defense on the merits, Plaintiff devotes much of the Opposition to specious procedural arguments.  He claims that the warning letter Daily Greens sent him to try to avoid serving a Rule 11 motion was actually the Rule 11 motion itself, and then contradictorily claims that Daily Greens attaching the actual Rule 11 motion that it served on him to a declaration to apprise the Court of the motion constituted "filing" the motion before the 21-day safe harbor expired.  These arguments make no sense and are baseless.  Daily Greens complied with the 21-day safe harbor provision because it served Plaintiff with its Rule 11 motion on March 30, 2017, over *19 months* before Daily Greens filed the Rule 11 motion on November 2, 2018.  Plaintiff also argues that the Rule 11 motion that was filed is slightly different than the one served on Plaintiff 19 months earlier.  He does not identify any material changes.  The filed Rule 11 motion does not have to mirror the one served, as long as there are no material differences.  *U.S. ex rel Tomlin v. Royco, Inc.*, No. 3-02-1179, 2010 WL 1727888, at *6 (M.D. Tenn. Mar. 30, 2010).

For the reasons above and below, the Court should grant Daily Greens' Motion.  Daily Greens has incurred an additional $11,200 preparing and filing this Reply.  (Hagey Reply Decl. ¶ 3.)  It therefore seeks a total of $142,305 in sanctions against Plaintiff and his lawyers.

I.  **PLAINTIFF FAILS TO REFUTE DAILY GREENS' SHOWING THAT THEIR FILINGS VIOLATED RULE 11**

The Opposition raises a disorganized and confusing hodgepodge of arguments regarding the merits of Daily Greens' Rule 11 Motion.  It fails to address – and therefore concedes – most of the arguments Daily Greens raised in its moving papers, and purports to respond to other points that Daily Greens did not make.  None of these arguments helps Plaintiff.

### A. Plaintiff's Effort to Muddle the Rule 11 Standard Is Not a Basis for Avoiding Sanctions

Rule 11 has three prongs: one for false allegations of fact, one for objectively baseless legal theories and one for improper purpose. Fed. R. Civ. P. 11. As explained in the moving papers and largely unaddressed by Plaintiff, his complaint violated all three prongs. In his lead argument on the merits (Opp. at 15-17), Plaintiff offers a discussion about improper purpose and cases where plaintiffs were sanctioned for suing the wrong parties. But it is unclear how this relates to any of his legal arguments on the merits or the specific contentions in Daily Greens' motion, which lays out each of his separate Rule 11 violations. None of these cases or arguments detracts in any way from the arguments in the moving papers.

### B. Plaintiff's Allegations that Daily Greens' Products Were "Heated" and "Pasteurized" Violated Rule 11

The Opposition does not dispute that if had Plaintiff conducted a reasonable investigation (or simply read the evidence that Daily Greens provided him), he would have known that the allegations regarding "never heated" and "not pasteurized" were false. (Mot. at 7-8.) Right after the complaint was filed, Daily Greens sent Plaintiff a letter explaining that Daily Greens' HPP process took place in refrigerated rooms, and that the juice never reaches ambient temperature in the process, much less a temperature that would pasteurize the juice. (Hagey Decl., Ex. 9.) Moreover, as explained in the moving papers (Mot. 6-8) and unrefuted in the Opposition, all available scientific evidence, governmental regulatory guidance, and available case law on the topic make clear that "heat pasteurization" is distinct from "high pressure processing." A reasonable pre-suit investigation would have revealed this to Plaintiff.

Plaintiff argues that he had "sufficient evidentiary support" for making these false claims because Congress defined HPP as pasteurization. (Opp. at 18-19.) Leaving aside that this

4

argument has nothing to do with factual support, this argument verges on nonsensical and is, itself, based on a misrepresentation of a Congressional committee statement.

Plaintiff contends that as of 2001, the FDA had not defined what pasteurization meant for juice products, and that a 2002 Congressional committee statement allowed manufacturers to use the term "pasteurization" to describe "a food safety effect, regardless of the technology or process employed to achieve that result." (Opp. at 18-19.) This argument fails for at least four reasons. *First*, the language Plaintiff quotes shows only that Daily Greens *could* legally label its products as "pasteurized" if it chose to, as long as its processing achieved the same food safety effect as pasteurization. Nothing in that passage suggests any legal basis that Daily Greens was *required* to label its non-pasteurized products as "pasteurized." *Second*, the same committee statement Plaintiff cites concludes: "Further, nothing in this provision mandates that products not required to be labeled, as 'pasteurized' presently is [*sic*] required to be labeled as 'pasteurized' solely for the fact that they could be labeled as 'pasteurized' under this provision." H.R. Rep. No. 107-424 at 681.[1] Thus, contrary to his representation to the Court, this committee statement actually says exactly the opposite of what he represented. *Third*, as the Court already explained, the FDA *has* defined pasteurization of juice in non-binding guidance, which defines that process as "a heat treatment sufficient to destroy vegetative cells of pathogens," and which later defines HPP, by contrast, as a "[n]on-[t]hermal [t]reatment for juice." (Dkt. No. 46 at 8 (citation omitted).) The Court further noted that a number of other guidance and regulation documents, as well as the dictionary, define pasteurization as a heating process. (*Id*. at 8-9.) *Fourth*, this

---

[1] With this selective quotation, Plaintiff has once again "carefully cropped" the text to include what he thinks helps him while omitting the portion that contradicts him.

argument ignores the plethora of additional available scientific evidence and regulatory guidance confirming that HPP is not the same as heat pasteurization. (*See e.g.*, Mot at 7-8.)

In sum, Plaintiff's allegation regarding "never heated" or "not pasteurized" were lacking in all evidentiary support or as the Court explained, "does not withstand even scant scrutiny." (Dkt. 46 at 6-7.)[2]

### C. Plaintiff's Allegations that HPP Materially Affects Daily Greens' Juices Violated Rule 11

As explained in the moving papers at 5-6 and unrefuted by Plaintiff, in 2014, the Honorable Vincent Chhabria in the Northern District of California dismissed claims brought by Plaintiff's lawyers that were virtually identical to those filed by Plaintiff here. In doing so, Judge Chhabria held that scientific articles cited by Plaintiff's lawyers showed that HPP has no material negative affect on juice, and therefore that plaintiff could not show materiality. *Hain*, 30 F. Supp. 3d at 944.

Plaintiff does not dispute that his complaints alleged that HPP "caus[es] structural changes to cell membranes and []inactivt[es] enzyme systems which are responsible for control of metabolic reactions" (*e.g.,* SAC, Dkt. 30, at 15) and that his complaints contained no reference to the articles his lawyers provided to Judge Chhabria. Nor does he offer any evidence to substantiate his knowingly false allegation.

The Opposition argues that *Hain* has no *res judicata* effect in this case because there is no privity of parties. (Opp. at 17.) This argument is a straw man. Daily Greens has never argued that *Hain* gives rise to *res judicata*; those words do not even appear anywhere in Daily Greens'

---

[2] Plaintiff also argues that he did not actually allege that it was misleading for Daily Greens to state "Never Heated" or "Not Pasteurized." (Opp. at 20-22.) But that is also not true. (SAC, Dkt. 30, ¶¶ 51, 106-110.) In fact, the Court expressly addressed, and dismissed Plaintiff's claims regarding "never heated" at pages 11-12 of its Order dismissing the case. (Dkt. 46.)

Rule 11 Motion. The point is that the Complaint makes factual representations about HPP that Plaintiff's lawyers knew to be unsupported – and still remain unsupported.

Plaintiff's lawyers have been aware since at least the July 2, 2014 Order in *Hain* that their claims about the effect of HPP on juice lack a sufficient factual basis to satisfy Rule 11, and the Opposition does nothing to justify this material misrepresentation. Their misconduct in filing this case anyway (and intentionally omitting those same studies in an attempt to mislead the Court) violated Rule 11. *Lipin v. Nat'l Union Fire Ins. Co.*, 202 F. Supp.2d 126, 140 (S.D.N.Y. 2002).

### D. Plaintiff's Allegations that He Thought Daily Greens' Products Were Not Subject to HPP Violate Rule 11

Plaintiff fails to dispute his allegations that he was unaware that Daily Greens' juice was subject to HPP were false. (Mot. at 7-8.) He does not dispute that Daily Greens' labels state that its juices are "**High Pressure Processed**" in large, boldface type. He does not deny that Daily Greens explains how HPP works in great detail on multiple pages of its website. Nor does he refute that he claimed to have read and relied on the labels and website in buying Daily Greens' juice. (*Id.* at 9-10; Hagey Decl., Exs. 5-8.) Such conduct violated Rule 11. *Prim v. Peatco Ltd. L.P.*, No. 90-cv-7272, 1994 WL 570754, at *6 (S.D.N.Y.).

Even worse, the Opposition makes no effort to address or explain how Plaintiff tried to avoid dismissal of this claim by misleading the Court by providing what the Court found to be misleadingly cropped images of Daily Greens' labels to make it look like the labels failed to disclose that Daily Greens performs HPP on its products. (Mot. at 1-2 (citing Sept. 4, 2018 Order, Dkt. No. 46, at 3).) This misconduct only highlights the bad faith by Plaintiff and is separately sanctionable itself.

7

Finally, the Opposition makes no attempt to show that Plaintiff had evidentiary or legal support for numerous other unfounded and false allegations in his complaints. After carefully considering the allegations regarding Daily Greens' supposed materially misleading representations, this Court concluded that they "fail[] to withstand even scant scrutiny."

- Plaintiff's allegation regarding the "cold pressed" label is "little more than grammatical sophistry" and "implausible on its face" (Dkt. No. 46 at 7);

- Plaintiff's claim that Daily Greens falsely represents its products as "fresh" is "simply not plausible" (*Id*. at 11);

- Plaintiff's argument regarding the "4.5 pounds of produce pressed into every bottle" is "farcical on its face" (*Id*. at 12).

By not addressing these baseless allegations, Plaintiff effectively conceded that all these nonsensical allegations exceed the bounds of reasonable argument. They are precisely the kind of allegations Rule 11 is intended to prevent.

### E.  Plaintiff Was Not Seeking an "Extension or Modification of Existing Law"

Plaintiff's final argument regarding the merits of Daily Greens' Rule 11 Motion is that he was seeking an extension or modification of existing law. (Opp. at 22.) In support of this argument, Plaintiff claims that he sought in the SAC to make sure that consumers were "apprised of certain production processes in unambiguous and clear terms." (*Id*. at 23.) This argument is false on its face. What Plaintiff and his lawyers actually did in the SAC was to "carefully crop[]" an image of Daily Greens' label to make it look like Daily Greens had misrepresented its production process and then sought "monetary damages, injunctive relief, restitution, disgorgement of all monies obtained by the unlawful conduct, interest, and attorney's fees and costs" under three separate causes of action. (SAC, Dkt. No. 30, at 16-19.) Nor does this argument explain the bulk of his Rule 11 violations, which involve false representations of *fact*. Such violations are not an attempt to extend the *law* in good faith.

8

Plaintiff's false representations of fact are especially egregious where, as here, Plaintiff's lawyers claim to have extensive experience in class actions against juice companies (Dkt. 40-2 (documenting at least nine virtually identical lawsuits filed by Plaintiff's lawyers as of July 2017)). Although it is not necessary for imposing Rule 11 sanctions, Courts may infer improper purpose from such expertise. *Colliton v. Cravath, Swaine & Moore LLP,* 2008 WL 4386764, at *14 & n.11 (S.D.N.Y. Sept. 24, 2008), *aff'd sub nom. Colliton v. Cravath, Swain & Moore LLP*, 356 F. App'x 535 (2d Cir. 2009) ("The filing of meritless claims by experienced counsel has been found to give rise to a 'strong inference ... [of] an improper purpose' in the Rule 11 context.") (citing *Huettig & Schnormm, Inc. v. Landscape Contractors Council of Northern Calif.*, 790 F.2d 1421, 1427 (9th Cir. 1986)). In *Huettig,* for example, the Court concluded that experienced labor law attorneys "must have known" the claims asserted were invalid justifying an inference that they acted solely for improper purpose. *Id.* at 1427. Just like in *Huettig*, it defies logic that the Plaintiff's lawyers who litter the federal courts with identical lawsuits against law-abiding juice companies, would not be aware of the extensive scientific evidence, regulatory guidance, and case law that precisely define the difference between "heat pasteurization" and "high pressure processing."

## II.     DAILY GREENS' MOTION IS PROCEDURALLY PROPER

Plaintiff attempts to avoid being held to account for his ethical violations by raising a variety of specious procedural arguments. None of them have merit.

### A.     Daily Greens Filed the Motion More than 19 Months after Serving it

Plaintiff's argument that Daily Greens' Rule 11 Motion violated the "safe harbor" provision of Rule 11 makes no sense. (Opp. 6-8.) Attached is the proof of service, which shows, as Plaintiff knows, that Daily Greens served its Rule 11 motion on March 30, 2017. (Hagey Reply Decl., Ex. 1.) It is further undisputed that Daily Greens then filed the Rule 11 Motion on

9

November 2, 2018 – more than *19 months* after serving it on Plaintiff and his lawyers. (Dkt. No. 50.) Plaintiff's argument that he did not get 21 days to review and voluntarily withdraw his false allegations is simply in bad faith and another reason sanctions are warranted.

### B. Daily Greens Served but Did Not File the Motion on March 30, 2017

Plaintiff claims that it was improper for Daily Greens to attach the Rule 11 Motion as an exhibit to its Motion to Dismiss, and that by doing so, Daily Greens actually *filed* the Rule 11 motion in violation of the 21-day safe harbor. (Opp. at 7-8 and 11-12.) That is also untrue, and Plaintiff cites no case law upholding this bizarre theory. Daily Greens attached a copy of the Rule 11 Motion it had just served on Plaintiff to its motion to dismiss filing to advise the Court that when it *did* file the Rule 11 Motion in the future, after the expiration of the safe harbor, the Court might want to schedule the two motions together, as there was considerable overlap in the arguments. It did not move the Court for relief under Rule 11 or submit a proposed order. The docket does not show any filing of a Rule 11 Motion; nor did the attachment of that document as an exhibit to Daily Greens' Motion to Dismiss trigger any need for Plaintiff and his lawyers to respond to a Rule 11 Motion.

Moreover, the Court's May 24, 2017 Order shows that the Court understood that Daily Greens' submission of Exhibit 1 to the Hagey Declaration in support of its Motion to Dismiss did not constitute a filing of a Rule 11 Motion. (Dkt. No. 25.) In its Order, the Court noted: "Concurrent with *filing* its 12(b)(6) motion in March, Defendant *served* Plaintiff's counsel with a Rule 11 motion for sanctions." (*Id*. at 6 (emphasis added).) In that Order, the Court also noted that consideration of the Rule 11 Motion was deferred pending disposition of Daily Greens' Motion to Dismiss. (*Id*. at 7.) Accordingly, the present Rule 11 Motion – filed after the Court ruled for Daily Greens on its Motion to Dismiss and *19 months after* it was served on Plaintiff – is procedurally proper.

10

### C. Daily Greens' March 15, 2017 Warning Letter Had Nothing to Do with the Rule 11 Safe Harbor

As a matter of professional courtesy and to avoid having to bring a Rule 11 motion, Daily Greens sent Plaintiff a letter informing him that his pleadings were false and asking him to voluntarily withdraw them. (Hagey Decl., Ex 9.) In his Opposition, Plaintiff devotes a number of paragraphs and a long string cite to arguing that Daily Greens' March 15, 2017 letter to his counsel was not a motion and therefore did not start the clock on the 21-day safe harbor. (Opp. at 8-10.) This argument is irrelevant; Daily Greens has never contended that its March 15 letter was a motion that triggered the 21-day safe harbor clock, and it served its actual motion subsequently, on March 30, 2017.

Plaintiff's case citations (Opp. at 12) are not a defense to sanctions. In *In re Jazz Photo Corp.*, 312 B.R. 524, 532 (Bankr. D.N.J. 2004), for example, the court rejected the debtor's argument that a letter notice stating that a creditor's claims were "not well founded" satisfied his obligation to serve a Rule 11 motion 21 days before filing it. Here, in contrast, Daily Greens served the instant motion a full *19 months* before filing it. *Wi-LAN Inc. v. LG Electronics, Inc.*, No. 10-cv-0432 (S.D.N.Y. May 10, 2013), also involved, *inter alia*, failure to comply with the safe harbor provision, and is likewise inapplicable.

### D. The Filed Motion Was Substantially the Same as the Served Motion for Purposes of the Safe Harbor

Plaintiff also argues that Daily Greens' Rule 11 Motion served on March 30, 2017, is "not the same motion" that it filed on November 2, 2018 and is therefore procedurally defective. (Opp. at 12.) This argument also fails. Plaintiff admits that the two documents "appear identical at a glance." (Dkt. No. 54 at 12.) They do because they are substantively identical. The November 2, 2018 filing does not contain any additional argument, theory, or legal citation and is, a virtually verbatim copy of the Motion served on March 30, 2017. The only difference – as

11

Plaintiff admits, (Dkt. No. 54 at 13) are minor edits to update the Court on the procedural history between March 2017 and November 2018 (such as the Court's granting Daily Greens' Motion to Dismiss), and additional references to where the FAC and SAC make the same false allegations as the Complaint. (*Compare* Dkt. No. 11-1 to Dkt. No. 51.)

Courts have rejected similar arguments when a filed Rule 11 motion was substantially similar to the served motion except for chronological or other minor updates. In *U.S. ex rel Tomlin v. Royco, Inc.*, No. 3-02-1179, 2010 WL 1727888, at *6 (M.D. Tenn. Mar. 30, 2010), the plaintiff argued that the defendant had not complied with Rule 11(c)(2) because the proposed Rule 11 motion the defendant had served was not exactly the same as the motion the defendant filed six months later. The court rejected that argument because the filed motion was "substantively sufficiently similar" in that the proposed motion had outlined the relevant law that formed the basis for the filed motion. The court logically explained, "Requiring a party to serve a copy of the exact Rule 11 motion that is filed at the conclusion of the lawsuit would result in the anomaly of precluding a party from updating the chronology of the case since the proposed Rule 11 motion was served." *Id; see also Abreu v. Alutiiq-Mele, LLC*, 2012 WL 4369734, at *10 (S.D. Fla. Aug. 3, 2012) ("even if the served and filed motions were not identical, Plaintiff cannot claim that she was not on notice as to the primary bases of Defendants' contentions for seeking sanctions. Given the substantive similarity of the served and filed motions with regard to Rule 11, the undersigned denies Plaintiff's objection to the Verified Motion on this basis").[3]

---

[3] The cases Plaintiff cites (Opp. at 13) are inapposite. In *Robinson v. Alutiq-Mele, LLC*, 643 F.Supp.2d 1342 (S.D. Fla. 2009), defendant served a boilerplate 5-page motion, then filed a 14-page brief, depriving plaintiff of notice of the grounds on which it was truly seeking sanctions. Plaintiff does not assert that was the case here. And in *SortiumUSA, LLC v. Hunger*, 2014 WL 1080765 (N.D. Tex. Mar. 18, 2014), the court denied the Rule 11 motion on the merits.

12

The same is true here: Plaintiff cannot and does not contend that the Rule 11 Motion Daily Greens filed on November 2, 2018 is different in any material way from the proposed Rule 11 Motion that it served on March 30, 2017 or that they were not on notice of arguments made in the filed motion. He merely points to the fact that Daily Greens changed the sentence, "This case is a paradigmatic lawyer-driven putative 'class action' filed by a captive plaintiff to extort money" to "This case was a putative 'class action' filed by a captive plaintiff to extort money from an honest business that makes good products." (Opp. at 12.) The substance of both sentences is the same, and Plaintiff does not contend otherwise or even claim that either sentence is somehow inaccurate. Accordingly, Plaintiff's argument fails.

### E. Plaintiff Cannot Blame Daily Greens for their Own Refusal to Withdraw or Correct Their False Allegations

In his final attempt to show that the Rule 11 Motion is procedurally improper, Plaintiff claims that he would have withdrawn and/or corrected their improper allegations, but for the parties' inability to agree on a briefing schedule "in the weeks after March 30, 2017." (Opp. at 14-15.) Yet another argument that makes no sense. Plaintiff offers no explanation for why he was unable to withdraw or correct his improper pleading in the more than year and a half that passed between Daily Greens serving the motion on March 30, 2017, and the Court's issuing its Order granting Daily Greens' Motion to Dismiss on September 4, 2018. Nor does Plaintiff explain why, instead of correcting his false and frivolous pleadings, he filed a First and then a Second Amended Complaint setting forth the same allegations. Nor does Plaintiff claim he ever made any effort to withdraw his false allegations or approached Daily Greens about doing so because that would also be untrue. The conduct he points to, his repeated refusal to agree to agree on briefing schedules and iterative amendment of the pleadings to add new and false claims are only further evidence of why sanctions are warranted.

13

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Daily Greens' motion and sanction Plaintiff and his lawyers in the amount of $142,305.


Dated: December 7, 2018               **BRAUNHAGEY & BORDEN LLP**


   /s/ J. Noah Hagey
By:  J. Noah Hagey

7 Times Square, 27th Floor
New York, NY 10036
Tel./Fax: (646) 829-9403
hagey@braunhagey.com

*Attorneys for Defendant Drink Daily Greens, LLC*

14